# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

TD AMERITRADE, INC., TD AMERITRADE HOLDING CORPORATION, INC., TD AMERITRADE IP COMPANY, INC., and TD AMERITRADE SERVICES COMPANY, INC.,

        Plaintiffs,

        v.

JAMES RICHARD MATTHEWS,

        Defendant.

Case No. 3:16-cv-00136-SLG

## **ORDER RE MOTION TO DISMISS**

Before the Court at Docket 41 is Plaintiffs' Rule 12(b)(6) Motion to Dismiss. The motion has been fully briefed.[1] Oral argument was not requested and was not necessary to the Court's decision.

Plaintiffs (collectively, "TD Ameritrade") initiated this action on June 27, 2016.[2] TD Ameritrade's Amended Complaint asserts three causes of action: declaratory judgment, cancellation and release of claimed nonconsensual common law lien pursuant to Alaska law, and injunctive relief.[3] Defendant James Matthews filed an Answer to the Amended

---

[1] *See* Docket 45 (Opp.); Docket 50 (Reply).

[2] Docket 1 (Compl.).

[3] Docket 4 (Am. Compl.).

Complaint that also asserted a counterclaim for copyright infringement.[4] On March 20, 2017, Mr. Matthews filed an Amended Answer asserting seven additional counterclaims.[5]

The Court has jurisdiction as to Mr. Matthews' copyright infringement claims under federal question jurisdiction.[6] The Court has supplemental jurisdiction over Mr. Matthews' state law counterclaims.[7]

## STANDARD OF REVIEW

TD Ameritrade moves to dismiss all of Mr. Matthews' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Supreme Court's interpretation of that rule in *Ashcroft v. Iqbal*.[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] *Iqbal* does not require a litigant to prove his case in his pleading, but it requires the litigant to "state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"[10] The pleading must contain "enough facts to state a claim to relief that is plausible on its face."[11] This inquiry requires a court to

---

[4] Docket 22 (Ans.) at 7, ¶ 55.

[5] Docket 33 (Am. Ans. and Countercls.); *see infra* pp. 5–6.

[6] 28 U.S.C. § 1331.

[7] *See* 28 U.S.C. § 1367(a) ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[8] *See* Docket 41 at 5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[9] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10] *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556) (alterations in original).

[11] *Twombly*, 550 U.S. at 570.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 2 of 15

"draw on its judicial experience and common sense."[12] When reviewing a Rule 12(b)(6) motion, a court considers only the complaint and other pleadings, documents incorporated into the pleadings by reference, and matters on which a court may take judicial notice.[13]

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[14] But leave to amend is properly denied as to those claims for which amendment would be futile.[15]

## BACKGROUND

For purposes of TD Ameritrade's Motion to Dismiss, the Court accepts the factual allegations in Mr. Matthews' operative pleading as true and "construe[s] them in the light most favorable" to him.[16] According to the First Amended Answer and Counterclaims, in April 2012, Mr. Matthews applied for an unfunded user-modifiable investment account with TD Ameritrade.[17] At or about the same time as he opened the account, Mr. Matthews entered into a Client Agreement with TD Ameritrade.[18] The account provided Mr.

---

[12] *Iqbal*, 556 U.S. at 679.

[13] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[14] Fed. R. Civ. P. 15(a).

[15] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[16] *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

[17] Docket 33 at 10, ¶ 61–63.

[18] Docket 4-3 (Matthews' Commercial Affidavit) at 15. The record also includes an End User License Agreement for thinkorswim® platform and paperMoney® functionality. Docket 4-10 (End User License Agreement) at 68. However, that document is dated January 29, 2016 and its

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 3 of 15

Matthews access to TD Ameritrade's "thinkorswim" applications program interface ("API"), which gave him the ability to create his own analytical tools for a self-directed trading environment.[19] Mr. Matthews alleges that users such as him were permitted to download the API and "were encouraged to devise their own software programs" by "modifying software routines available on the site."[20] Mr. Matthews alleges that "all copyrighted routines created by TD Ameritrade [were] locked, and thus could not be modifiable."[21] After signing up for an account, Mr. Matthews alleges that he used the API to create analytical routines "in a novel manner."[22] By May 27, 2012, Mr. Matthews alleges that he had created source code for over 100 routines to work with the thinkorswim API.[23]

On May 27, 2012, Mr. Matthews alleges that TD Ameritrade "perpetrated a cyber attack" which "destroyed [Mr. Matthews'] hard drive controller."[24] Mr. Matthews had saved 84 of the routines he had developed on another hard drive, so they were not destroyed by the cyber attack.[25] However, Mr. Matthews asserts that TD Ameritrade had copied the

---

relevance to Mr. Matthews' claims, which arose in 2012, is undetermined. The record also contains a License Agreement in which Mr. Matthews agreed that his use of TD Ameritrade's trading software was subject to the terms and conditions of that agreement. *See* Docket 4-3 at 46.

[19] *See* Docket 33 at 10, ¶ 61–64.

[20] Docket 33 at 10–11, ¶ 65–70.

[21] Docket 33 at 11, ¶ 67.

[22] Docket 33 at 10, ¶ 64.

[23] Docket 33 at 12, ¶ 74.

[24] Docket 33 at 12, ¶ 75.

[25] Docket 33 at 12, ¶ 75.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 4 of 15

routines he had created, all or most of which had copyright notices that Mr. Matthews had imbedded in them.[26] After obtaining Mr. Matthews' software, TD Ameritrade is alleged to have inserted its own copyright notice and date into Mr. Matthews' software.[27] TD Ameritrade alleges that it terminated its business relationship with Mr. Matthews in early June 2012.[28] Mr. Matthews maintains that TD Ameritrade had "effectively wrongfully terminated" his account on May 27, 2012.[29]

Mr. Matthews filed a copyright notice for the 84 routines under United States Copyright Registration Number TXu1-822-654 effective June 28, 2012.[30] Mr. Matthews asserts that TD Ameritrade has been using his routines and allows at least 6.5 million of its funded users to use Mr. Matthews' code without his authorization.[31]

## DISCUSSION

Mr. Matthews alleges eight counterclaims: a copyright infringement claim in violation of 17 U.S.C. § 101 *et seq.*; one claimed violation of 17 U.S.C. §§ 1201 and 1202; a claim seeking injunctive relief on claims one and two; a violation of Alaska Statute 45.50.471, the Unfair Trade Practices Act; two claims of breach of contract and breach of the implied covenant of good faith and fair dealing; trespass on real property; and a

---

[26] Docket 33 at 12, ¶ 76, 78.

[27] Docket 33 at 12, ¶ 79.

[28] Docket 4-2 (Letter from TD Ameritrade to Matthews dated June 11, 2012) at 1.

[29] Docket 33 at 4, ¶ 13.

[30] Docket 33 at 13, ¶ 81.

[31] Docket 33 at 13, ¶ 82.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 5 of 15

demand for accounting.[32] TD Ameritrade moves to dismiss each counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will address each claim in turn, and consistent with the Supreme Court's guidance in *Iqbal*, "begin[s] by taking note of the elements a plaintiff must plead to state a claim."[33]

### 1. **Copyright Infringement**

Mr. Matthews' First Counterclaim alleges copyright infringement. To state a prima facie case of direct copyright infringement under 17 U.S.C. § 101, *et seq.*, a party must satisfy two requirements: "(1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106."[34]

TD Ameritrade asserts that Mr. Matthews "does not have ownership rights in any asserted copyrightable work" and that it holds "all copyrights relative to the thinkorswim software."[35] Mr. Matthews responds that registration of a copyright is prima facie evidence of a valid copyright.

"[T]he registration of the copyright certificate itself establishes a prima facie presumption of the validity of the copyright in a judicial proceeding . . . ."[36] But the statutory presumption of validity can be rebutted.[37] To rebut this presumption, a party

---

[32] Docket 33 at 14–18.

[33] *Ashcroft v. Iqbal*, 566 U.S. 662, 675 (2009).

[34] *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

[35] Docket 41 at 5.

[36] *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992).

[37] *Entm't Research Grp., Inc. v. Genesis Creative Grp. Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 6 of 15

disputing validity of the copyright "must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."[38]

Although Mr. Matthews alleges that he has obtained a copyright registration for his code, TD Ameritrade points to the Client Agreement to rebut the presumption of the copyright's validity. Mr. Matthews acknowledges he signed and agreed to the terms of the Client Agreement, which states that "[m]y use of [TD Ameritrade's] Services will not confer any title, ownership interest, or intellectual property rights to me."[39] The agreement also expressly prohibits Mr. Matthews from creating derivative works: "I will not . . . create derivative works from, distribute, redistribute, display, sell or transfer, or create derivative products from the Services."[40] Thus, even if Mr. Matthews obtained a copyright registration for work he claims is original and novel, he appears to be precluded from obtaining a copyright of any derivative works by the terms of the Client Agreement.

Yet Mr. Matthews alleges in his First Amended Answer and Counterclaims that users of TD Ameritrade's API "were permitted and encouraged to modify certain software routines available on the site . . . ."[41] However, Mr. Matthews has not alleged any facts as to who, how, or when he was "permitted and encouraged" to modify TD Ameritrade's

---

[38] *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003) (summary judgment granted on copyright invalidity because lamp design lacked needed quantum of originality).

[39] Docket 33 at 4, ¶ 15; Docket 4-3 at 17, ¶ 7(d).

[40] Docket 4-3 at 17, ¶ 7(b).

[41] Docket 33 at 11, ¶ 66. Mr. Matthews asserts that the software routines that he was encouraged to modify were not locked and to his knowledge all copyrighted routines were locked and were not modifiable. Docket 33 at 11, ¶ 67.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 7 of 15

software.  Moreover, Mr. Matthews has not alleged any basis to disregard the restriction on derivative works in the Client Agreement.

In reply, TD Ameritrade asserts that dismissal is warranted because Mr. Matthews has provided no factual allegations to support his claim that TD Ameritrade permitted and encouraged him to use its software.[42]  The Court agrees.  Mr. Matthews' claim that he had been given the authority to create and copyright derivative work appears to be directly at odds with the Client Agreement.  While such a claim is possible, Mr. Matthews has failed to allege any facts to demonstrate that the claim is plausible.[43]  Accordingly, TD Ameritrade's Motion to Dismiss as to the First Counterclaim will be granted.  However, leave to amend will be accorded so as to permit Mr. Matthews the opportunity to allege nonconclusory facts that explain why Mr. Matthews' alleged software modifications to TD Ameritrade's API are protected by a valid copyright.

### 2. Digital Millennium Copyright Act

Mr. Matthews' Second Counterclaim alleges violations under 17 U.S.C. §§ 1201 and 1202 of the Digital Millennium Copyright Act.  Section 1201(a) provides "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  TD Ameritrade contends that Mr. Matthews has not provided facts to show that TD Ameritrade bypassed the requisite technological measure in accessing and obtaining Mr. Matthews' code.[44]  Mr. Matthews asserts that "it is . . .

---

[42] *See* Docket 50 at 2 (citing *Iqbal*, 556 U.S. at 679).

[43] *See Twombly,* 550 U.S. at 570.

[44] Docket 41 at 9.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 8 of 15

common knowledge that hard drives have for many years . . . used encryption technology to secure information on the hard drives."[45]

A technological measure "effectively controls access to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."[46] The House Judiciary Committee provided the following analogy:

> [t]he act of circumventing a technological protection measure put in place by a copyright owner to control access to a copyrighted work is the electronic equivalent of breaking into a locked room in order to obtain a copy of a book.[47]

Mr. Matthews' First Amended Answer and Counterclaims alleges that TD Ameritrade hacked his computer, "destroyed Defendant's hard drive controller," and "copied the routines" he had created.[48] But Mr. Matthews did not allege any facts regarding the security of his hard drive or facts to indicate that his hard drive had encryption technology that was circumvented by TD Ameritrade. Although a hard drive with adequate protections could be a "technological measure," Mr. Matthews has failed to allege sufficient facts to push this claim "across the line from conceivable to plausible."[49]

---

[45] Docket 45 at 10.

[46] 17 U.S.C. § 1201(a)(3)(B).

[47] H.R. Rep. No. 105–551, at 17 (1998).

[48] Docket 33 at 12, ¶ 75–76.

[49] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 9 of 15

Mr. Matthews also alleges that TD Ameritrade violated 17 U.S.C. § 1202 of the Digital Millennium Copyright Act.[50] Section 1202(b) provides that "[n]o person shall, without the authority of the copyright owner or the law . . . (1) intentionally remove or alter any copyright management information . . . ."[51] Under the statute, "copyright management information" includes "[t]he name of, and other identifying information about, the author of a work."[52]

TD Ameritrade asserts that Mr. Matthews "does not provide any copyright management information" and did not allege that TD Ameritrade "intentionally removed or altered such information."[53] But in Mr. Matthews' First Amended Answer and Counterclaims, Mr. Matthews alleges that after TD Ameritrade stole his software, it removed or struck through his copyright notice that he had imbedded in the software.[54] However, as discussed above, Mr. Matthews has not shown valid ownership of a copyright.[55] Ownership of a valid copyright is a predicate to asserting a claim under the Digital Millennium Copyright Act.[56] As discussed above with regard to the copyright infringement counterclaim, the existence of a valid copyright has not been adequately

---

[50] Docket 33 at 14.

[51] 17 U.S.C. § 1202(b).

[52] 17 U.S.C. § 1202(c).

[53] Docket 41 at 11.

[54] Docket 33 at 12, ¶ 78–79.

[55] *See supra* at pp. 6–8.

[56] *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004) ("A plaintiff alleging a violation of § 1201(a)(2) [of the Digital Millennium Copyright Act] must prove: (1) ownership of a valid copyright on a work . . . .").

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 10 of 15

pleaded. Accordingly, Mr. Matthews' Second Counterclaim will be dismissed with leave to amend.

### 3. **<u>Injunctive Relief</u>**

Mr. Matthews' Third Counterclaim seeks injunctive relief as it relates to both the First and Second Counterclaims. As discussed above, Mr. Matthews has not pleaded facts to establish a plausible claim for either copyright infringement or violations to the Digital Millennium Act. Therefore, Mr. Matthews' claim for injunctive relief will also be dismissed with leave to amend.

### 4. **<u>Unfair Trade Practices Act</u>**

Mr. Matthews' Fourth Counterclaim alleges TD Ameritrade violated Alaska's Unfair Trade Practices Act.[57] Mr. Matthews does not oppose dismissal of this claim, but asserts it should be without prejudice. In an affidavit appended to TD Ameritrade's Complaint, Mr. Matthews stated that "on or about, April 11, 2012 Affiant discovered his, (copyrighted source code) was appropriated, copied and placed in [TD Ameritrade's] publicly accessible library for use by all other system users."[58] Mr. Matthews was aware of TD Ameritrade's alleged misappropriation in 2012, yet he did not file this counterclaim until 2016, considerably more than two years after the statute of limitations on this claim had run.[59] Based on the foregoing, TD Ameritrade's Motion to Dismiss Mr. Matthews' Fourth

---

[57] Alaska Stat. § 45.50.531.

[58] Docket 4-3 at 6, ¶ 17 (capitalization omitted).

[59] *See* Alaska Stat. § 45.50.531(f) ("A person may not commence an action under this section more than two years after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471.").

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 11 of 15

Counterclaim under the Unfair Trade Practices Act will be granted with prejudice and without leave to amend.

### 5. **<u>Breach of Contract and Implied Covenant of Good Faith and Fair Dealing</u>**

Mr. Matthews' Fifth and Sixth Counterclaims each allege breach of contract and breach of implied covenant of good faith and fair dealing under Nebraska, Alaska, and/or Illinois law.[60] To establish a breach of contract claim in Alaska, Nebraska, or Illinois, a claimant must establish the existence of a contract, a breach of that contract, and resultant damages.[61]

Mr. Matthews' Fifth Counterclaim alleges that TD Ameritrade violated a licensing agreement published on TD Ameritrade's website. The pleading references the agreement as being annexed as Exhibit A; but no agreement was annexed. Mr. Matthews has failed to state a claim for breach of contract in his Fifth Counterclaim. He has failed to clearly identify the contractual agreement that existed between TD Ameritrade and himself; he has failed to identify the specific provision(s) of that agreement that he is alleging was breached by TD Ameritrade and when and how that breach occurred; and he has failed to identify the damages he incurred as a result of that alleged breach. However, because it appears there was some contractual relationship between the

---

[60] Docket 33 at 16–17.

[61] *See Great W. Sav. Bank v. George W. Easley Co., J.V.*, 778 P.2d 569, 577 (Alaska 1989) (holding breach of contract claim adequately pleaded, which alleged a contractual obligation, breach and resultant damages); *Phipps v. Skyview Farms, Inc.*, 610 N.W.2d 723, 730 (Neb. 2000) ("In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty."); *Kopley Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 226 (Ill. App. 2007) ("To succeed on a claim for breach of contract, a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach.").

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 12 of 15

parties at some point, one final opportunity to amend as to this claim will be granted. Since Mr. Matthews fails to identify the contract he is alleging that TD Ameritrade breached, he has also not pleaded enough facts to establish a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Fifth Counterclaim will be dismissed with leave to amend.

Mr. Matthews' Sixth Counterclaim alleges that TD Ameritrade's cancellation of his account constituted a breach of contract.[62] However, the Client Agreement between the parties specifies that TD Ameritrade "reserve[s] the right to suspend and deny access to the Services without prior notice or for any reason."[63] It is not plausible that TD Ameritrade's cancellation of Mr. Matthews' account constituted a breach of contract. Nor has Mr. Matthews pleaded any facts that could plausibly support a claim for a breach of the implied covenant of good faith and fair dealing based on the cancellation. Accordingly, TD Ameritrade's Motion to Dismiss Mr. Matthews' Sixth Counterclaim will be granted with prejudice and no leave to amend.

### 6. Trespass to Real Property

The Seventh Counterclaim alleges trespass to real property pursuant to Alaska Statute § 09.10.050.[64] Mr. Matthews acknowledges in his Opposition to the Motion to Dismiss that "Plaintiffs are technically correct in stating that Matthews did not make any allegations regarding real property . . . ."[65] The Court finds that there is no plausible

---

[62] Docket 30 at 17.

[63] Docket 4-3 at 17.

[64] Docket 33 at 17.

[65] Docket 45 at 17.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 13 of 15

factual basis for such a claim. Accordingly, the Court will grant TD Ameritrade's Motion to Dismiss Mr. Matthews' Seventh Counterclaim with prejudice.

### 7. Accounting

The Eighth Counterclaim seeks an accounting. A claim for accounting is generally an equitable remedy.[66] Under Alaska law, "[e]quity has jurisdiction to compel an accounting where any fiduciary relationship exists."[67] A "fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence."[68]

Mr. Matthews has not provided any facts to demonstrate that he and TD Ameritrade had a fiduciary relationship. Thus, he has failed to plead a plausible factual basis for an accounting remedy. Therefore, the Court will grant TD Ameritrade's Motion to Dismiss as to Mr. Matthews' Eighth Counterclaim with prejudice and without leave to amend.

## CONCLUSION

Therefore, IT IS ORDERED that TD Ameritrade's Motion to Dismiss at Docket 41 is GRANTED as follows:

Mr. Matthews' First, Second, and Third Counterclaims, the copyright claims, are dismissed without prejudice and with leave to amend.

---

[66] *See Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 770 (Alaska 1977).

[67] *Id.*

[68] *Seybert v. Cominco Alaska Expl.*, 182 P.3d 1079, 1090 (Alaska 2008) (quoting *Munn v. Thornton*, 956 P.2d 1213, 1220 (Alaska 1998)).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 14 of 15

Mr. Matthews' Fourth Counterclaim, the Alaska Unfair Trade Practices Act claim, is dismissed with prejudice.

Mr. Matthews' Fifth Counterclaim alleging an unspecified breach of contract and breach of the implied covenant of good faith and fair dealing is dismissed without prejudice and with leave to amend.

Mr. Matthews' Sixth Counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing based on the account termination is dismissed with prejudice.

Mr. Matthews' Seventh Counterclaim for trespass to real property is dismissed with prejudice.

Mr. Matthews' Eighth Counterclaim for accounting is dismissed with prejudice.

Mr. Matthews may file a Second Amended Answer and Counterclaim(s) consistent with the terms of this order, but must do so no later than **November 27, 2017**. If Mr. Matthews fails to file a Second Amended Answer and Counterclaim(s) that is consistent with the terms of this order by that date, all of his remaining counterclaims may thereafter be dismissed with prejudice and without further notice to him.

DATED this 25th day of October, 2017 at Anchorage, Alaska.

>                               */s/ Sharon L. Gleason*
>                               UNITED STATES DISTRICT JUDGE

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Motion to Dismiss
Page 15 of 15