# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

TD AMERITRADE, INC., TD AMERITRADE HOLDING CORPORATION, INC., TD AMERITRADE IP COMPANY, INC., and TD AMERITRADE SERVICES COMPANY, INC.,

Plaintiffs,

v.

JAMES RICHARD MATTHEWS,

Defendant.

Case No. 3:16-cv-00136-SLG

## ORDER RE PENDING MOTIONS

Before the Court at Docket 80 is Plaintiffs' (collectively, "TD Ameritrade") Motion to Dismiss. Defendant James Matthews filed an opposition to the motion at Docket 82 and TD Ameritrade filed a reply at Docket 83. Mr. Matthews also filed a Motion to File Surreply at Docket 88 and a Motion to Strike and for Reconsideration at Docket 90. Oral argument was not requested and was not necessary to the Court's decision. Based on the foregoing, the Motion to Dismiss will be granted in part and denied in part, the Motion to File Surreply will be granted, and the Motion to Strike and for Reconsideration will be denied.

## LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion, a court considers only the pleadings and documents incorporated into the pleadings by reference, as well as matters on which a

court may take judicial notice.[1]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3]  Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."[4]  A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[5]

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[6]  But leave to amend is properly denied as to those claims for which amendment would be futile.[7]  "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment."[8]

## BACKGROUND

The underlying facts of this case are well known to the parties and are set forth in the Court's prior order on TD Ameritrade's first motion to dismiss at Docket 62.  The

---

[1] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *Id.* at 678.

[4] *Id.*

[5] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[6] Fed. R. Civ. P. 15(a)(2).

[7] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[8] *See Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

pertinent facts as alleged in Mr. Matthews' Corrected Second Amended Answer and Counterclaims ("SAAC") are briefly summarized as follows:

In early 2012, Mr. Matthews became aware of TD Ameritrade's thinkorswim applications program interface ("API").[9] On or about April 11, 2012, Mr. Matthews received access to a live, unfunded, user-modifiable investment account with TD Ameritrade.[10] This allowed him access to TD Ameritrade's thinkorswim API, which enabled him to create a self-directed trading environment.[11] Mr. Matthews alleges he created analytical tools expressly permitted by thinkorswim.[12] He alleges users were encouraged to practice with the API and were encouraged to devise their own software programs and modify software routines that were not locked.[13] However, in his SAAC, Mr. Matthews also alleges that he has not "claimed that any of the source code created by him . . . was based upon a modification of any code or software from any TD Ameritrade website or trading platform, nor was it in any manner derived from any of TD Ameritrade's software."[14] Mr. Matthews obtained a copyright registration for the computer code effective June 28, 2012.[15]

---

[9] Docket 72 (Corrected Second Am. Answer and Countercls.) at 10, ¶¶ 61–62.

[10] Docket 72 at 11, ¶ 68.

[11] Docket 72 at 11, ¶ 68.

[12] Docket 72 at 11, ¶ 69.

[13] Docket 72 at 12, ¶¶ 70, 71.

[14] Docket 72 at 17, ¶ 103. Mr. Matthews alleged in his First Amended Answer and Counterclaims that he "created analytical tools . . . in [a] novel manner, using the API" and that users of TD Ameritrade's thinkorswim "were permitted and encouraged to modify software routines available on the site." Docket 33 at 10–11, ¶¶ 64, 66.

[15] Docket 72 at 15, ¶ 92.

Mr. Matthews attaches an unsigned licensing agreement he maintains that he downloaded from TD Ameritrade's website in March 2017, and asserts that it "is substantially the same" as the one in effect in May 2012.[16] He alleges that he had no agreement with TD Ameritrade that precluded him from filing for copyright protection for software created by him "in connection with the TD Ameritrade website and software."[17] He alleges that the primary purpose of the Client Agreement was to govern stock trading activity and that the Court must determine "what, if any licensing agreement existed between the parties" and then the Court "must reconcile all such agreements which cannot be done as a matter of a pleading."[18]

Mr. Matthews alleges that on May 27, 2012, TD Ameritrade perpetrated a cyber attack against Mr. Matthews' computer, destroying his hard drive controller and copying his routines.[19] He maintains that "[a]ll or most of the software stolen by thinkorswim had a copyright notice imbedded by Matthews that clearly identified Matthews, and his claim to copyright."[20] Mr. Matthews alleges that TD Ameritrade continues to use, provide, and permit others to use Mr. Matthews' copyrighted code.[21]

---

[16] Docket 72 at 13–14, ¶ 76; referencing Docket 72-3 (Exhibit C—Licensing Agreement with Commercial Affidavit of James Richard Matthews dated June 10, 2015); *see also* Docket 72-2 (Online Licensing Agreement dated Aug. 14, 2017).

[17] Docket 72 at 13, ¶¶ 78–79.

[18] Docket 72 at 14, ¶ 82.

[19] Docket 72 at 14–15, ¶¶ 86, 87.

[20] Docket 72 at 15, ¶ 89.

[21] Docket 72 at 16, ¶ 94.

On June 27, 2016, TD Ameritrade filed its Complaint, alleging causes of action for declaratory judgment, cancellation and release of claimed nonconsensual common law lien, and injunctive relief.[22] On September 9, 2016, TD Ameritrade filed a First Amended Complaint, alleging the same causes of action as the original complaint.[23]

Mr. Matthews filed an answer to the First Amended Complaint on January 4, 2017. He asserted counterclaims and sought injunctive relief for copyright infringement.[24] On March 20, 2017, Mr. Matthews filed a First Amended Answer to the Amended Complaint, which also included eight counterclaims: three claims for copyright infringement; an alleged violation to Alaska's Unfair Trade Practices Act; two claims for breach of contract and breach of the implied covenant of good faith and fair dealing; trespass on real property; and a demand for accounting.[25] TD Ameritrade filed a motion to dismiss Mr. Matthews' counterclaims.[26] On October 25, 2017, this Court granted TD Ameritrade's Motion to Dismiss, allowing Mr. Matthews to file an amended answer allowing counterclaims only as to the copyright infringement claims and the breach of an unspecified contract and an associated implied covenant of good faith and fair dealing claim.[27] All other counterclaims were dismissed with prejudice.[28] On November 29,

---

[22] Docket 1 (Compl.) at 10–12.

[23] Docket 4 (Am. Compl.).

[24] Docket 22 (Answer) at 7–8.

[25] Docket 33 (Am. Answer) at 14–18.

[26] Docket 41 (Mot. to Dismiss).

[27] Docket 62 (Order on Mot. to Dismiss) at 14–15.

[28] The Court dismissed the following claims with prejudice: the Fourth Counterclaim, which alleged a violation of Alaska's Unfair Trade Practices Act; the Sixth Counterclaim, alleging breach of contract and breach of the implied covenant of good faith and fair dealing based on the account

2017, Mr. Matthews filed his SAAC, which now alleges that he did not use TD Ameritrade's trading software to create his copyrighted source code.²⁹ TD Ameritrade seeks dismissal of the SAAC.

**DISCUSSION**

Mr. Matthews' SAAC alleges four counterclaims: a copyright infringement claim in violation of 17 U.S.C. § 101 *et seq.*; a claimed violation of 17 U.S.C. §§ 1201 and 1202; a claim seeking injunctive relief on claims one and two; and a claim for breach of contract and the implied covenant of good faith and fair dealing.³⁰ TD Ameritrade again moves to dismiss each counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. Motion at Docket 90³¹

Mr. Matthews asserts that the Court cannot consider the terms of the Client Agreement in determining whether he is a valid copyright owner because he did not incorporate the Client Agreement into his counterclaims.³² He claims that this failure to incorporate requires the Court to either disregard the Client Agreement or convert the motion to dismiss to a motion for summary judgment.³³

---

termination; the Seventh Counterclaim, alleging trespass to real property; and the Eighth Counterclaim, seeking an accounting. Docket 62 at 15.

²⁹ Docket 72 at 19–26.

³⁰ Docket 72 at 17–18, ¶¶ 103–07.

³¹ Mr. Matthews filed a Motion for Leave to File a Surreply at Docket 88. The Court has considered the surreply and thereby grants the motion.

³² Docket 90 at 3.

³³ Docket 90 at 4 (citing Fed. R. Civ. P. 12 ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated

"[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."[34] "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them."[35] The Client Agreement was filed by TD Ameritrade in the record at Docket 4-3 as Exhibit C to TD Ameritrade's Complaint.[36] In Mr. Matthew's SAAC, he "admits that the papers attached as Plaintiffs' Exhibit C were sent to TD Ameritrade, and refers the Court to the contents thereof[.]"[37] Moreover, Mr. Matthews specifically refers to the Client Agreement in his SAAC.[38] Mr. Matthews does not contest the authenticity of the Client Agreement and relies on its contents in his SAAC. Therefore, the Motion to Strike at Docket 90 will be denied and the Court will consider the

---

as one for summary judgment under Rule 56.")).

[34] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider [on a motion to dismiss] certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) (considering Cardholder Agreement entered into by parties provided by defendants on a motion to dismiss "whose contents are alleged in the complaint and whose authenticity no party questions").

[35] *Lee*, 250 F.3d at 688 (citations and quotations omitted).

[36] Docket 4-3 (Client Agreement) at 15.

[37] Docket 72 at 4, ¶ 14.

[38] *See* Docket 72 at 14, ¶ 82 ("[A]ny claim by TD Ameritrade that the so-called 'client agreement,' the primary purpose was to govern stock trading activity, is not well founded, and that in order to determine what, if any licensing agreement existed between the parties, the initial Court must reconcile all such agreements—which cannot be done as a matter of pleading.").

Client Agreement in ruling on the Motion to Dismiss without converting the motion to one for summary judgment.[39]

At Docket 90, Mr. Matthews also asks this Court to reconsider its October 2017 order on TD Ameritrade's first motion to dismiss. The Court will deny that aspect of the motion because it is untimely.[40]

### 2. **Motion to Dismiss**

#### a. *Copyright Infringement*

Mr. Matthews' copyright infringement counterclaim alleges that his copyrighted source code was misappropriated by TD Ameritrade without his permission.[41] TD Ameritrade asserts that the Client Agreement precludes Mr. Matthews from having a valid copyright in the source code because his source code is a derivative work of TD Ameritrade's thinkorswim applications program interface ("API").[42]

The Court's previous order stated as follows:

Although Mr. Matthews alleges that he has obtained a copyright registration for his code, TD Ameritrade points to the Client Agreement to rebut the presumption of the copyright's validity. Mr. Matthews acknowledges he signed and agreed to the terms of the Client Agreement, which states that "[m]y use of [TD Ameritrade's] Services will not confer any title ownership interest, or intellectual property rights to me." The agreement also expressly prohibits Mr. Matthews from creating derivative works: "I will not . . . create derivative works from, distribute, redistribute, display, sell or transfer, or create derivative products from the Services." Thus, even if Mr. Matthews

---

[39] Mr. Matthews appears to assert that the Court may consider the Client Agreement as long as the Court also considers and accepts his surreply at Docket 88, which the Court has done. *See* Docket 90 at 7.

[40] *See* D. Ak. L. R. 59.1(b)(1) ("[A] motion for reconsideration of an order must be filed not later than fourteen (14) days after entry of the order.").

[41] Docket 72 at 19, ¶ 115.

[42] Docket 80 at 4 (citing Docket 4-3 at 17, ¶ 7).

obtained a copyright registration for work he claims is original and novel, he appears to be precluded from obtaining a copyright of any derivative works by the terms of the Client Agreement.[43]

To the extent Mr. Matthews seeks to pursue a counterclaim for copyright infringement for code that is a derivative work of TD Ameritrade's source code, he is precluded from doing so, because the Client Agreement specifically prohibits Mr. Matthews from creating a derivative work and it is undisputed that he signed and agreed to its terms.[44]

However, Mr. Matthews' SAAC maintains that the source code he created and copyrighted is not a derivative work of TD Ameritrade.[45] He makes the following allegations in his SAAC:

> In this case, Defendant Matthews did not work with the building blocks provided by thinkorswim; instead he created new building blocks for thinkorswim, to accomplish certain goals he wished to achieve, and substantially did achieve[.]
>
> . . .

---

[43] Docket 62 at 7 (citations omitted) (quoting Docket 4-3 at 17, ¶ 7).

[44] *See* 17 U.S.C. § 101 ("A derivative work is a work based upon one or more preexisting works[.]"); Docket 72 at 5, ¶ 15. Mr. Matthews asserts that the Client Agreement "makes no reference to the thinkorswim platform, or permissions expressly granted to users in the thinkorswim Platform." Docket 82 at 14. The Client Agreement provides "I will not . . . create derivative products from the Services." Docket 4-3 at 17, ¶ 7(b). "Services" is defined as "the websites, the Brokerage Services, the TD Ameritrade Content and the Third-Party Content." Docket 4-3 at 15. "TD Ameritrade Content" is defined as "all information, tools, and services available on your website, other than Brokerage Services provided by you, and not by a third party." Docket 4-3 at 15. Moreover, "websites" is defined as "the internet sites of TD Ameritrade, whose domain name is registered as http://www.tdameritrade.com *and others*." Docket 4-3 at 15 (emphasis added). Although the Client Agreement does not make a specific reference to the thinkorswim platform, the agreement clearly precludes users from creating derivative works from TD Ameritrade Content or Services on TD Ameritrade's websites, which includes the thinkorswim platform.

[45] Docket 82 at 2.

> [N]ever has Matthews' [sic] ever claimed that any of the source code created by him, upon which this action is based, was based upon a modification of any code or software from any TD Ameritrade website or trading platform, nor was it in any manner derived from any of TD Ameritrade's software; and if TD Ameritrade perceives that Matthews did so, then their perception is faulty.
>
> . . .
>
> In addition, none of Matthews['] code was prepared inside TD Ameritrade's website; to the contrary, all of Matthews' code was created on Matthews' own computer system, separate and apart from TD Ameritrade's system[.]
>
> . . .
>
> [N]one of the said software code in which Matthews claims the aforesaid creative and ownership interest was derived from, any software code owned by TD Ameritrade, and/or appearing on any of TD Ameritrade's or TD Ameritrade's thinkorswim website(s)—nor did Matthews ever claim it to be so.[46]

"A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'"[47] TD Ameritrade nonetheless seeks dismissal of the copyright claims, arguing that Mr. Matthews cannot show he is a valid copyright owner in light of the Client Agreement.[48] "To rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."[49] TD Ameritrade cites to *Bieg v. Hovnanian Enters., Inc.*, in

---

[46] Docket 72 at 11, n.1; Docket 72 at 17–18, ¶¶ 103–07; *see* Fed. R. Civ. P. 11(b)-Representations to the Court ("By presenting to the court a pleading, . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contents have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").

[47] *United Fabrics Int'l., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)); *see also Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("[C]opyright registration creates a presumption of ownership[.]").

[48] Docket 80 at 7.

[49] *United Fabrics Int'l., Inc.*, 630 F.3d at 1257 (quoting *Lamps Plus, Inc. v. Seattle Lighting Fixture*

support.[50] In *Bieg*, the plaintiff had filed copyright registrations for various drawings, creating a rebuttable presumption of copyright ownership. The district court held that the defendant had rebutted the presumption of validity by "presenting evidence that the drawings were created as 'works-for-hire'" based on the plaintiff conceding that the drawings were created as "works-for-hire."[51] However, *Bieg* was not decided on a motion to dismiss; rather, it was decided on a motion for summary judgment. Mr. Matthews' SAAC states a plausible claim for copyright infringement to the extent it alleges that Mr. Matthews' code was not derived from TD Ameritrade's source code but was instead created on his own computer system, "separate and apart from TD Ameritrade's system"; to this extent, TD Ameritrade's Motion to Dismiss Mr. Matthews' counterclaim for copyright infringement will be denied.

### b. Digital Millennium Copyright Act

Mr. Matthews' second counterclaim alleges violations under 17 U.S.C. § 1201 and 1202 of the Digital Millennium Copyright Act ("DMCA"). Section 1201(a) provides "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." TD Ameritrade maintains that Mr. Matthews has failed to state a claim under this section "because Defendant has not pleaded facts supporting a 'technological measure' as defined by the statute."[52]

The Court's prior order provides as follows:

---

*Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003)).

[50] 157 F. Supp. 2d 475 (E.D. Penn. 2001).

[51] *Id.* at 479.

[52] Docket 80 at 9.

> A technological measure effectively controls access to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work. . . . Mr. Matthews' First Amended Answer and Counterclaims alleges that TD Ameritrade hacked his computer, destroyed Defendant's hard drive controller, and copied the routines he had created. But Mr. Matthews did not allege any facts regarding the security of his hard drive or facts to indicate that his hard drive had encryption technology that was circumvented by TD Ameritrade. Although a hard drive with adequate protections could be a technological measure, Mr. Matthews has failed to allege sufficient facts to push his claim across the line from conceivable to plausible.[53]

Mr. Matthews' SAAC includes citations to Wikipedia and judicial decisions that discuss various security devices.[54] He then alleges "[t]he protective devices described above were in place at the time of TD Ameritrade's attack."[55] But the SAAC fails to specifically allege what technological measure(s), if any, Mr. Matthews had on his hard drive at the time of the alleged cyber attack.[56] Accordingly, TD Ameritrade's Motion to Dismiss is granted with regard to this counterclaim. татаTD Ameritrade argues Mr. Matthews "should not be allowed to amend the pleadings in his Opposition."[57] TD Ameritrade is correct in

---

[53] Docket 62 at 9 (citations and quotations omitted).

[54] *See* Docket 72 at 21–23, ¶¶ 127–131.

[55] Docket 72 at 24, ¶ 133.

[56] Mr. Matthews requests the Court to take judicial notice that it "is such common knowledge that hard drives have for many years, including in 2010 and even prior, used encryption technology to secure information on the hard drives, and that the controller is where such encryption software resides." Docket 72 at 21, ¶ 127. The Court will not take judicial notice that there was encryption software on Mr. Matthews' hard drive in May 2012.

[57] Docket 83 at 7. Mr. Matthews' opposition requests that the Court consider that his hard drive was protected by "Windows Firewall; Windows Defender; Cisco Security on the Router, and Java Virtual Hotspot on the phone." Docket 82 at 16. However, the information is not alleged in the SAAC, so the Court will not consider it. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.").

that regard, but the Court will grant leave to amend solely to allow Mr. Matthews to allege the specific technological measure(s) on his hard drive at the time of the alleged attack.

Mr. Matthews also alleges a copyright infringement claim under 17 U.S.C. § 1202 of the Digital Millennium Copyright Act ("DMCA").[58] The Court's prior order provides, "Ownership of a valid copyright is a predicate to asserting a claim under the DMCA."[59] As discussed above, Mr. Matthews has now adequately pleaded ownership of a valid copyright. Accordingly, TD Ameritrade's Motion to Dismiss Mr. Matthews' copyright infringement claim under Section 1202 of the DMCA will be denied.

### c. Injunctive Relief

Mr. Matthews' third counterclaim seeks injunctive relief relating to his first and second counterclaims for copyright infringement. As discussed above, Mr. Matthews has sufficiently pleaded facts to support his first counterclaim for copyright infringement and his copyright infringement claim under Section 1202 of the DMCA. Therefore, his claim for injunctive relief is also sufficiently pleaded as to these claims. TD Ameritrade's motion to dismiss Mr. Matthews' third counterclaim will be denied as to these claims.

However, injunctive relief as to his claim under Section 1201 of the DMCA is not sufficiently pleaded at this time for the reasons discussed above. TD Ameritrade's motion to dismiss Mr. Matthews' third counterclaim for his claim under Section 1201 will be granted with leave to amend granted solely to add allegations of specific technological measures.

---

[58] Docket 72 at 21.

[59] Docket 62 at 10.

> *d. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing*

Mr. Matthews' fourth counterclaim alleges a cause of action for breach of contract and the implied covenant of good faith and fair dealing.[60] This Court's prior order held as follows:

> Mr. Matthews has failed to state a claim for breach of contract in his Fifth Counterclaim. He has failed to clearly identify the contractual agreement that existed between TD Ameritrade and himself; he has failed to identify the specific provision(s) of that agreement that he is alleging was breached by TD Ameritrade and when and how that breach occurred; and he has failed to identify the damages he incurred as a result of that breach. . . . Since Mr. Matthews fails to identify the contract he is alleging that TD Ameritrade breached, he has also not pleaded enough facts to establish a claim for breach of the implied covenant of good faith and fair dealing.[61]

Mr. Matthews' SAAC makes minimal changes to this claim.[62] The SAAC includes a copy of a licensing agreement that Mr. Matthews claims is the same as the one on the website in 2012 "except for the lower portion of the last page," although he does not explain how that lower portion is different.[63] The SAAC also includes another licensing agreement that appears to be a version Mr. Matthews procured from TD Ameritrade's

---

[60] Docket 72 at 25.

[61] Docket 62 at 12, 13.

[62] Mr. Matthews changes the name of the parties and adds/changes one paragraph. The paragraph reads as follows:

> TD Ameritrade [is] to interpret [its] single contract, as [it has] done in opposition to Matthews' Complaint, in such a manner is [sic] to not give effect to the various (at least two) contracts of the parties, and rather to [] selectively pick and choose between various agreements, coupled with their professions of good faith, is contrary to the implied covenant of good faith and fair dealing; and accordingly the determination of this issue should await discovery, and further proceedings.

Docket 72 at 26–27, ¶ 148.

[63] *See* Docket 72 at 25–26, ¶ 144 (citing Docket 72-3 (Licensing Agreement)).

thinkorswim website on August 14, 2017.[64] Mr. Matthews cites to a portion of the licensing agreements in his SAAC that discusses "Copyright Complaints," which provides, "If you believe that your work has been copied in a way that constitutes copyright infringement or are aware of any infringing material placed by any third party on the Software, please contact us."[65] However, Mr. Matthews fails to allege that this is the provision of a licensing agreement he had with TD Ameritrade that he maintains was breached and how TD Ameritrade allegedly breached this provision.[66] Moreover, Mr. Matthews does not allege when the alleged breach occurred; nor does he identify the damages he incurred as a result of the alleged breach.[67] Mr. Matthews has failed to cure the deficiencies of his First Amended Answer as identified in the Court's previous order as to this claim. Therefore, Mr. Matthews' claim for breach of contract and the implied covenant of good faith and fair dealing will be dismissed.

"The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."[68] When determining whether to grant leave to amend, the district court considers: "(1) bad faith, (2) undue delay, (3) prejudice

---

[64] Docket 72-2; *cf.* Docket 72 at 13–14, ¶ 76 (referencing March 2017). The Court assumes that the version of the licensing agreement attached as Exhibit B to the SAAC was obtained on August 14, 2017 because that date is printed on the upper left corner on each page of the document.

[65] Docket 72 at 13, ¶ 77.

[66] It is difficult to see how TD Ameritrade could ever breach this provision since it makes no promise to do anything in this particular provision.

[67] Mr. Matthews asserts that the thinkScript User Manual "should be viewed as an implied license" and that "any attempt by TD Ameritrade to enforce any of its agreements contrary to the permissions granted in the thinkScript User Manual, would be a breach of the covenant of good faith and fair dealing." Docket 82 at 16. Mr. Matthews does not refer to or mention the thinkScript User Manual in his SAAC; nor does he explain how the manual constitutes an implied license.

[68] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint."[69] "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment."[70] In this case, Mr. Matthews has filed two sets of counterclaims and has failed to cure the specific deficiencies the Court identified in its prior order as to these claims. Therefore, as to the breach of contract claims, including the alleged breach of the implied covenant of good faith and fair dealing, leave to amend will be denied and these claims will be dismissed with prejudice.

## CONCLUSION

IT IS THEREFORE ORDERED as follows:

1. TD Ameritrade's Motion to Dismiss at Docket 80 is DENIED as to Mr. Matthews' First Counterclaim for copyright infringement,[71] Second Counterclaim for copyright infringement under Section 1202 of the DMCA, and Third Counterclaim for injunctive relief related to those claims.

2. TD Ameritrade's Motion to Dismiss at Docket 80 is GRANTED in part as follows:

    a. Mr. Matthews' Second Counterclaim for copyright infringement under Section 1201 of the DMCA is DISMISSED without prejudice and with leave to amend solely to allege technological measures.

---

[69] *Id.*

[70] *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

[71] *But see supra* p. 9 (holding Mr. Matthews cannot maintain a cause of action for copyright infringement for code that is derivative of TD Ameritrade's source code).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, Inc., et al. v. Matthews*
Order re Pending Motions
Page 16 of 17

    b. Mr. Matthews' Third Counterclaim for injunctive relief under Section 1201 of the DMCA is DISMISSED without prejudice with leave to amend solely to allege technological measures.

    c. Mr. Matthews' Fourth Counterclaim for breach of contract and the implied covenant of good faith and fair dealing is DISMISSED with prejudice.

3. Mr. Matthews' Motion to File Surreply at Docket 88 is GRANTED. Mr. Matthews' Motion for Reconsideration at Docket 90 is DENIED as untimely. Mr. Matthews' Motion to Strike at Docket 90 is DENIED.

4. Mr. Matthews may file a Third Amended Answer and Counterclaim(s) consistent with the terms of this order, but must do so no later than **July 30, 2018**. If Mr. Matthews fails to file a Third Amended Answer and Counterclaim(s) that is consistent with the terms of this order by that date, Mr. Matthews' Section 1201 claim in the Second and Third Counterclaims will be dismissed with prejudice.

DATED this 16th day of July, 2018 at Anchorage, Alaska.

                                                     */s/ Sharon L. Gleason*
                                                     UNITED STATES DISTRICT JUDGE