## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

TD AMERITRADE, INC., *et al.*,

         Plaintiffs,

    v.

JAMES RICHARD MATTHEWS,

         Defendant.

Case No. 3:16-cv-00136-SLG

## ORDER RE PENDING MOTIONS AND SCHEDULING DISCOVERY STATUS CONFERENCE

Before the Court at Docket 119 is Plaintiffs-Counterclaim-Defendants' (collectively, "TD Ameritrade") Motion for Protection from Defendant's First Set of Requests for Production. Defendant-Counterclaimant James Richard Matthews filed an opposition at Docket 120, which he corrected at Docket 124. TD Ameritrade filed a reply at Docket 125. The Court ordered TD Ameritrade to file a copy of its responses and objections,[1] and TD Ameritrade did so at Docket 130.

Mr. Matthews filed a Motion for Leave to File Surreply at Docket 131, which is also ripe for decision.[2] Also fully briefed and before the Court is Mr. Matthew's Motion to Extend Discovery Deadlines by Three Months at Docket 143 (errata copy).[3]

---

[1] Docket 129.

[2] TD Ameritrade's opposition is at Docket 134; Mr. Matthews' reply is at Docket 141.

[3] TD Ameritrade's opposition is at Docket 146; Mr. Matthew's reply is at Docket 149.

## BACKGROUND

The underlying facts of this case are well-known to the parties and are set forth in the Court's orders on TD Ameritrade's first, second, and third motions to dismiss; they are not repeated here.[4]    The relevant facts as alleged in Mr. Matthews' Third Amended Answer and Counterclaims ("TAAC") are briefly summarized as follows:

On or about April 11, 2012, Mr. Matthews opened a live, unfunded, user-modifiable investment account with TD Ameritrade.[5]  This granted him access to TD Ameritrade's "thinkorswim" application program interface ("API"),[6] which enabled him to create a self-directed trading environment.[7]  Mr. Matthews alleges that he created analytical tools using the API, as expressly permitted by

---

[4] *See* Docket 62 (Order re Motion to Dismiss); Docket 97 (Order re Pending Motions); Docket 108 (Order re Motion to Dismiss).

[5] Docket 98 (Third Am. Answer and Countercls.) at 12, ¶ 68.

[6] In the TAAC, Mr. Matthews alleges:

> Application program interface (API) is a set of routines, protocols, and tools for building software applications. An API specifies how software components should interact. Additionally, APIs are used when programming graphical user interface (GUI) components. A good API makes it easier to develop a program by providing all the building blocks. A programmer then puts the blocks together.

Docket 98 at 11, ¶ 62 n.1 (quoting *API – application program interface*, WEBOPEDIA, https://www.webopedia.com/TERM/A/API.html (last visited Nov. 5, 2019)).

[7] Docket 98 at 12, ¶ 68.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 2 of 22

thinkorswim.[8]  Mr. Matthews alleges that he also developed "well over 100 routines" to work with the API,[9] and that he obtained a copyright registration for 84 of these, effective June 28, 2012.[10]

Mr. Matthews alleges that on May 27, 2012, TD Ameritrade perpetrated a "cyber attack" against his computer, destroying his hard drive controller.[11]  Mr. Matthews further alleges that prior to destroying his hardware, TD Ameritrade copied the routines that he had created.[12]  Mr. Matthews alleges that TD Ameritrade continues to use, provide, and permit others to use his copyrighted code.[13]

The TAAC asserts three counterclaims:  a copyright infringement claim under 17 U.S.C. § 101 *et seq.*, based on TD Ameritrade's alleged distribution of Mr. Matthews' copyrighted computer code;[14] a claimed violation of 17 U.S.C. §§ 1201 and 1202, based on the alleged cyber attack through which TD Ameritrade

---

[8] Docket 98 at 12, ¶ 69.

[9] Docket 98 at 15, ¶¶ 84–85.

[10] Docket 98 at 16, ¶ 92; *see also* Docket 4-3 at 26–28 (June 28, 2012 certificate of copyright registration).

[11] Docket 98 at 15, ¶ 86.

[12] Docket 98 at 15, ¶ 87.

[13] Docket 98 at 16, ¶ 94.

[14] Docket 98 at 19–21, ¶¶ 109–124.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 3 of 22

gained access to Mr. Matthews' hard drive;[15] and a claim for permanent injunctive relief.[16] The Court denied TD Ameritrade's motion to dismiss the TAAC in December 2018,[17] and the case has since progressed to discovery.

Mr. Matthews sent TD Ameritrade his First Set of Requests for Production on April 30, 2019.[18] TD Ameritrade responded with multiple objections on July 1, 2019,[19] and subsequently filed its motion for a protective discovery order on July 10, 2019.[20]

Discovery in this case was set to close on September 27, 2019.[21] The Court granted the parties' stipulation to extend discovery deadlines by one month on September 30, 2019.[22] Mr. Matthews filed a motion requesting an additional two-month extension of the discovery deadlines on September 27, 2019.[23]

_____

[15] Docket 98 at 21–26, ¶¶ 125–136.

[16] Docket 98 at 26–27, ¶¶ 137–142.

[17] Docket 108; *see also* Docket 100 (Motion to Dismiss TAAC).

[18] Docket 119-1 (Matthews' First Set of Requests for Production).

[19] Docket 130 (TD Ameritrade's Response).

[20] Docket 119.

[21] Docket 114 at 5 (Scheduling and Planning Order).

[22] Docket 145; *see also* Docket 135 (Joint Stipulation).

[23] Docket 143. Filed before the Court granted the parties' joint stipulation for a one-month extension, Mr. Matthews' motion requested an extension of three months from the deadlines in the Scheduling and Planning Order "or two-months from the new end date . . . should th[e] Court approve the stipulat[ion]." Docket 143 at 2. After Mr. Matthews filed his motion, the Court also approved the parties' joint stipulation to conduct certain depositions after the close of discovery. Docket 151 (Joint Stipulation); Docket 152 (Order). Mr. Matthews filed an additional motion requesting a one-month

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 4 of 22

**DISCUSSION**

**1.      The Validity of the 2017 Protective Order**

As a preliminary matter, the Court notes that the Stipulated Protective Order it approved on June 7, 2017, remains in full force and effect.[24]  Mr. Matthews contends at several places in his briefing that this order has been nullified by subsequent filings.[25] But neither the parties' stipulation to vacate pretrial deadlines nor the Court's order adopting that stipulation mentions the protective order, let alone invalidates it.[26]   And the Court's notation in the February 15, 2019 Scheduling and Planning Order that the parties would submit a proposed confidentiality agreement[27] did not invalidate the Court's prior protective order.[28] The June 7, 2017 Stipulated Protective Order is still valid and in full effect unless and until amended by this Court.

---

extension of discovery deadlines to November 29, 2019.  Docket 150.

[24] Docket 52 (order approving stipulated protective order); *see also* Docket 51 (Stipulated Protective Order).

[25] *See* Docket 141 at 3 (Mr. Matthews' argument that the Protective Order was "rendered a nullity by the stipulated cancellation of the Scheduling and Planning Order"); Docket 143 at 12 (Mr. Matthews' argument that "there  is presently no 'Protective Order' in effect, as the prior protective order was rendered a nullity'"); *see also* Docket 79 (order approving stipulation to vacate pretrial deadlines).

[26] Docket 78 (Stipulation to Vacate Pretrial Deadlines); Docket 79.

[27] Docket 114 at 6; *see also* Docket 143 at 12 (Mr. Matthews' argument that the February 2019 Scheduling and Planning order "confirmed" the nullification of the earlier protective order).

[28] *Accord* Docket 146 at 7 (TD Ameritrade's recognition that "this Court entered that Stipulated Protective Order and has not rescinded it").

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 5 of 22

## 2.    The Motion to Extend Discovery Deadlines (Docket 143)

Mr. Matthews requests an additional two-month extension of the discovery deadlines, such that discovery would close on December 27, 2019.[29]  Discovery in this case has been punctuated by disputes, as evidenced by the parties' recent filings, and alleged delay by both parties.[30]

As one of the bases underlying his motion, Mr. Matthews contends that TD Ameritrade did not timely disclose its witnesses.[31]  The Scheduling and Planning Order required the parties to exchange final discovery witness lists on August 9, 2019.[32]  TD Ameritrade complied with this deadline, sending Mr. Matthews a list of nine witnesses on August 9, 2019.[33]  But Mr. Matthews alleges that TD Ameritrade disclosed an additional witness, Devexperts GmbH, on September 6, 2019, "during the follow-up on a good faith meeting."[34]  And he further maintains that TD

---

[29] Docket 143 at 15.

[30] *See, e.g.*, Docket 143 at 9–11 (describing TD Ameritrade's alleged "failure to timely disclose witnesses"); Docket 146 at 2 ("[Mr.] Matthews simply cannot show good cause for the extension he seeks due to his own lack of diligence in pursuing discovery.").

[31] Docket 143 at 9–11.

[32] Docket 114 at 2, 4; *see also* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "the address and telephone number of each individual likely to have discoverable information").

[33] Docket 126.

[34] Docket 143 at 10.  However, Mr. Matthews identified Devexperts as his own witness in his August 9, 2019 final witness list.  Docket 127 at 2.  Moreover, the parties' February 8, 2019 Scheduling and Planning Conference Report identified information relating to "the company known or advertised as 'Devexperts'" as relevant to discovery. Docket 113 at 3–4.  Regardless of the status of Devexperts, the Court finds good cause

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 6 of 22

Ameritrade did not disclose information about how to contact its witnesses until "later [in] September, 2019."[35]  TD Ameritrade responds that its ability to identify and disclose relevant witnesses was frustrated by "[Mr.] Matthews' refusal to either explain his copyrighted work or identify the software he is accusing [of infringement]."[36]  TD Ameritrade's explanation for its delay may have considerable merit.  However, in light of the present state of discovery and in keeping with its resolution of TD Ameritrade's own discovery motion at Docket 119, discussed below, the Court finds good cause to warrant granting Mr. Matthews' motion to extend the close of discovery by two months to **December 27, 2019**.[37]  **However, no further extensions of the discovery deadline will be granted absent exceptional good cause.**

In light of the extended discovery deadline, TD Ameritrade shall respond to Mr. Matthews' additional interrogatories, served on October 4, 2019,[38] **within 21 days of the date of this order**.

---

to extend the current discovery deadlines through December 27, 2019.

[35] Docket 143 at 9.

[36] Docket 146 at 5; *see also* Docket 146 at 6 ("TD Ameritrade did not, and still does not, know which witnesses are relevant in view of [Mr.] Matthews' vague and unbounded claims.").

[37] The Court notes that Mr. Matthews has filed an additional motion requesting a one-month extension of discovery deadlines to November 29, 2019.  Docket 150.  In light of its ruling on the motion at Docket 143, the Court denies Mr. Matthew's motion at Docket 150 as moot.

[38] *See* Docket 149 at 4 ("On October 4, we served additional interrogatory requests and a notice to produce, on TD Ameritrade, which they have refused to answer because the

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 7 of 22

### 3. The Motion for Leave to File a Surreply (Docket 131)

Mr. Matthews has requested leave to file a surreply to TD Ameritrade's motion for a protective discovery order.[39] The Court has reviewed the parties' briefing on that motion and finds that any new issues raised in TD Ameritrade's reply are not directly related to the relief sought in its underlying motion.[40] The Court will therefore deny Mr. Matthews' Motion for Leave to File a Surreply.

### 4. The Motion for a Protective Order from Mr. Matthews' First Set of Requests for Production (Docket 119)

Federal Rule of Civil Procedure 26(b) generally allows for broad discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[41]

However, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[42] Accordingly, the Court "may,

---

response date would be outside the present discovery deadline . . . .").

[39] Docket 131.

[40] *See Doe v. Exxon Mobil Corporation*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014) (explaining that when deciding whether to grant leave to file surreply, courts should consider "whether the . . . proposed surreply would be helpful to the resolution of the pending motion").

[41] Fed. R. Civ. P. 26(b)(1).

[42] *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 8 of 22

for good cause, issue an order" that limits discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[43]

TD Ameritrade argues that Mr. Matthews' requests for production ("RFPs") are overbroad, irrelevant to his copyright claims, and not proportional to the needs of the case.[44] In its motion, TD Ameritrade brings a global objection about the scope of Mr. Matthews' RFPs and also challenges several specific requests.

## A.    The Definition of the Production Period

Mr. Matthews' requests for production define the production period as extending from "the first date of the ownership or control of the thinkorswim platform by TD Ameritrade, to the date of the production hereunder."[45] Many of his requests seek production of documents from 2010 to the present.[46] TD Ameritrade asserts that this is an "unjustifiably broad scope" for production,[47] which it alleges would extend back to approximately 2002.[48] The TAAC alleges that Mr.

---

courts need not condone the use of discovery to engage in 'fishing expedition[s].'" (alteration in original) (quoting *Exxon Corp. v. Crosby-Miss. Res., Ltd.*, 40 F.3d 1474, 1487 (5th Cir. 1995))).

[43] Fed. R. Civ. P. 26(c).

[44] Docket 119 at 2.

[45] Docket 119-1 at 10 (footnote omitted).

[46] *See, e.g.*, Docket 119-1 at 13, 18–20.

[47] Docket 125 at 5 n.5; *see also* Docket 130 at 9 (objecting to "the definition of 'Production Period' as overbroad").

[48] Docket 119 at 6 ("[T]he thinkorswim application itself predates Mr. Matthews' alleged

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 9 of 22

Matthews did not gain access to the thinkorswim API until April 2012,[49] and that the cyber attack that allegedly stole his copyrighted code occurred on May 27, 2012.[50] Mr. Matthews has not adequately explained why documents predating the creation of his TD Ameritrade account and development of his copyrighted code would be relevant to his counterclaims. Accordingly, the Court will grant TD Ameritrade's motion for a protective order insofar as Mr. Matthews seeks any production of documents created prior to April 1, 2012.[51]

**B.  TD Ameritrade's request to limit discovery to the 34 studies that Mr. Matthews identified in his July 20, 2015 affidavit**

In an affidavit by Mr. Matthews dated July 20, 2015, that was sent to TD Ameritrade prior to this litigation, Mr. Matthews provided a copy of his software copyright registration and identified a "Partial set of Copyrighted Code Files in Use by [TD Ameritrade] as of June 2015," which listed 34 studies.[52] TD Ameritrade contends that "only those . . . specific studies have been identified as being in dispute in this case," and requests a protective order limiting discovery solely to

---

copyright by approximately a decade.").

[49] Docket 98 at 12, ¶ 68.

[50] Docket 98 at 15, ¶ 86.

[51] *Cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to . . . events that occurred before an applicable limitations period . . . .").

[52] Docket 4-3 at 26–28, 29.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 10 of 22

documents related to the 34 studies identified in Mr. Matthews' July 20, 2015 affidavit.[53]

The parties' briefing, however, indicates that TD Ameritrade may have already produced "the source code for 343 studies."[54]  In light of this production, TD Ameritrade's request to limit discovery to the 34 specific studies identified in Mr. Matthews' July 2015 Affidavit may be moot.[55]  Mr. Matthews acknowledges TD Ameritrade's production of the studies in his Motion for Leave to File a Surreply, but contends that he has been unable to access many of the files due to a lack of instructions.[56]  He further asserts that the source code produced by TD Ameritrade

---

[53] Docket 119 at 4, 7–8.  In its Response to Matthews' First Set of Requests for Production, TD Ameritrade consistently objected to discovery reaching beyond the 34 identified studies. *See, e.g.*, Docket 130 at 6 ("To the extent that Matthews' definition encompasses specific computer code, TD Ameritrade further objects to discovery regarding any Studies other than those included in Matthews' prior asserted list July 20, 2015 . . . .").

[54] Docket 125-1 at 2, ¶ 4 (Decl. of Melanie L. Ronen).  TD Ameritrade attached a table listing the contents its July 1, 2019 production, which included over 400 files, as an exhibit to the declaration of Melanie L. Rosen, one of its attorneys.

[55] It is unclear to the Court whether this production related to anything more than the 34 studies identified in Mr. Matthews' July 2015 Affidavit.  Despite Ms. Ronen's statement in her declaration that TD Ameritrade had produced "the source code for 343 studies," Docket 125-1 at 2, ¶ 4, TD Ameritrade's briefing maintains that it "produced documents to [Mr.] Matthews on July 1, 2019, which included source code, metadata, and source code logs *related to the studies listed in* [*Mr.*] *Matthews' July 20, 2015 'affidavit.'*" Docket 125 at 8 (emphasis added).

[56] Docket 131 at 5–7.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 11 of 22

is "invalid" and that "there is absolutely no credibility . . . that these files constitute source code" because they contain many comments.[57]

Due to these difficulties, the Court orders the parties to meet and confer **within seven days of the date of this order**, to determine what additional assistance, if any, Mr. Matthews requires from TD Ameritrade in order to be able to access the source code for the 343 studies.[58] The parties should also determine whether Mr. Matthews seeks production of additional thinkorswim studies within the production period prescribed above. Each party shall then file a report on the status of this discovery issue with the Court **within seven days of the meet and confer**. Each party's report shall not exceed five pages.

To help guide the parties in their meet and confer, the Court observes as follows: TD Ameritrade relies on the proposition that "a copyright claim is limited to what is registered under [the] U.S. Copyright Act, 17 U.S.C. § 411(a)," citing *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, ___ U.S. ___, 139 S.

---

[57] Docket 141 at 5.

[58] It is unclear to the Court whether Mr. Matthews seeks production of downloadable copies of the thinkorswim programs in addition to the source code, or whether he only refers to the fact that the programs are advertised as downloadable to argue that production of the underlying code would not be burdensome. *See* Docket 120 at 4 (Mr. Matthews' statement that "one of TDA's unique claims and features with respect to thinkorswim is that the entire program is downloadable by the users"); Docket 125 at 6 (TD Ameritrade's argument that "[Mr.] Matthews seems to misunderstand what producing the underlying source code of the thinkorswim application entails by comparing it to the 'program [that] is downloadable by the users"); Docket 125-2 at 2, ¶¶ 2–3 (Mr. Nave describing difference between downloadable programs and source code); Docket 141 at 5 (Mr. Matthews contending that "TD Ameritrade has steadfastly refused to provide us copies of the downloadable thinkorswim programs").

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 12 of 22

Ct. 881 (2019).[59]  In that case, the Supreme Court did not address the proper scope of an infringement claim, but rather its timing; it construed the term "registration" as it is used in 17 U.S.C. § 411(a) to "bar[] a copyright owner from suing for infringement until 'registration . . . has been made.'"[60]

Even assuming that an infringement claim is limited to the copyright's registration,[61] TD Ameritrade's focus on the 34 studies identified by Mr. Matthews' is misplaced.  The proper scope of discovery is governed by its relevance to the entirety of Mr. Matthews' *registered copyright*, and not solely to the 34 studies that he identified in his July 20, 2015 affidavit, particularly as that affidavit identified the 34 studies as only a *partial* list.[62]  Mr. Matthews may reasonably invoke discovery tools in an effort to identify all programs or studies that he reasonably believes violated his rights as a copyright owner.[63]

---

[59] Docket 119 at 6.

[60] *See Fourth Estate Pub. Corp.*, 139 S. Ct. at 888–90 (omission in original) (quoting 17 U.S.C. § 411(a)).

[61] *But see id.* at 887 ("[A]*lthough an owner's rights exist apart from registration*, registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." (emphasis added) (citation omitted)).

[62] Docket 4-3 at 29.

[63] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.").  Mr. Matthews claims that through the discovery process, he has identified an additional "50 of his codes which were . . . stolen by [TD Ameritrade]," Docket 124 at 2, and that "there may be more among the 400 of more studies now in . . . thinkorswim."  Docket 124 at 4.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 13 of 22

However, there is considerable merit to TD Ameritrade's assertion that it cannot know what is relevant to Mr. Matthews' counterclaims because he has thus far failed to "identif[y] with any specificity what code is allegedly covered by his copyright registration."[64] Mr. Matthews contends in his opposition that "he is awaiting the Certified copy of the Deposit of his code with the Copyright Office, which has been delayed due to miscommunications and backlogs."[65] It is difficult for the Court to comprehend the reasons for this seven-year delay. The parties should discuss this issue at the meet and confer to the extent it is still unresolved.

### C. TD Ameritrade's objections to specific RFPs

In addition to its global objection to the scope of discovery, TD Ameritrade claims that three of Mr. Matthews' specific RFPs are overbroad, unduly burdensome, or outside the scope of discovery.[66]

### 1. RFP No. 1

Mr. Matthews' RFP No. 1 seeks:

All Computer files containing Computer Code, including the Source Code, and the corresponding .ts file, or the corresponding Workspace

---

[64] Docket 119 at 3–4. *See also* Docket 146 at 5 (TD Ameritrade's argument that it has been prejudiced by "[Mr.] Matthews' refusal to either explain his copyrighted work or identify the software he is accusing [of infringement]").

[65] Docket 124 at 11. Mr. Matthews' July 20, 2015 affidavit did supply a copy of his copyright registration, however, which listed "84 Custom Indicators Identified as COPYWRITTEN CODE." Docket 4-3 at 26–28.

[66] The Court has already ruled above that the production period for Mr. Matthews' counterclaims does not extend earlier than April 1, 2012, *see supra* at 10; the three RFPs to which TD Ameritrade objects, as well as the Court's analysis of them, are subject to this limitation.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 14 of 22

.xml file, as applicable, at any time introduced into, or contained in, the thinkorswim platform, or in any thinkorswim Derivative, during the Production Period.[67]

The definitions of "thinkorswim platform" and "computer code" would require TD Ameritrade to produce the code for the entire thinkorswim application in order to comply with this request.[68] TD Ameritrade objected to this request as "vague, ambiguous, overly broad, unduly burdensome, and beyond the scope of permissible discovery" and stated that it would only produce documents related to the 34 studies discussed above.[69] In its briefing, TD Ameritrade maintains that Mr. Matthews "provides no basis for the extremely burdensome demand for the *entire* thinkorswim *application* code base (as opposed to discrete studies available through thinkorswim)."[70]

The TAAC alleges that Mr. Matthews created routines or "building blocks" to work with the thinkorswim API,[71] and that TD Ameritrade copied his routines and provides the routines and derivatives of them to its customers through thinkorswim.[72] Mr. Matthews has not explained why the code for the entire

---

[67] Docket 119-1 at 12.

[68] *See* Docket 119-1 at 5–6 (defining terms); *see also* Docket 119 at 6 ("Request No. 1 goes to all versions of the *entire* thinkorswim application." (emphasis in original)).

[69] Docket 130 at 9–10.

[70] Docket 125 at 5 (emphasis in original).

[71] Docket 98 at 15, ¶¶ 84–85; *see also supra* note 6 (defining API).

[72] Docket 98 at 15–16, ¶¶ 87, 91, 94.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 15 of 22

application is relevant to this claim instead of just the API and the discrete studies in thinkorswim. In fact, in his opposition, Mr. Matthews states that he has identified "approximately 50 codes that have been stolen" by TD Ameritrade, and that "there may be more among the *400 or so studies* now in . . . thinkorswim."[73] This indicates that only those particular studies are relevant to his counterclaims, not the entire thinkorswim application.

Mr. Matthews argues that the production he seeks would not be burdensome because the downloadable copy of thinkorswim is relatively small.[74] Bradley Nave, the Director of Trader Services at TD Ameritrade, addressed this argument in a declaration attached to TD Ameritrade's reply.[75] He explained that "the underlying source code for the entire thinkorswim desktop application consists of approximately 4,449,000 lines of code," and that "[t]he studies comprise a small percentage of the total thinkorswim code base."[76] Based on the foregoing, the Court finds that production of the source code for the entire thinkorswim application is overbroad and disproportionate to the needs of the case. The Court therefore grants TD Ameritrade's motion as to RFP No. 1, except insofar as it seeks a

---

[73] Docket 124 at 4 (emphasis added).

[74] Docket 124 at 4–5.

[75] Docket 125-2.

[76] Docket 125-2 at 3, 4, ¶¶ 4, 7.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 16 of 22

downloadable copy of the discrete studies identified by the parties as relevant to Mr. Matthews' counterclaims through the meet and confer process outlined above.

## 2. RFP Nos. 20 and 21

Mr. Matthews' RFP No. 20 requests: "Records showing all IP addresses and physical locations of the TD Ameritrade server farms and server data centers and repositories, between 2010 and the date of the production hereunder."[77] Mr. Matthews' RFP No. 21 requests: "All server log files for TD Ameritrade servers between 2010 and the date of the production hereunder."[78] TD Ameritrade objected to both of these RFPs as unduly burdensome and "irrelevant to [Mr.] Matthews' claims."[79] In its motion requesting a protective order, TD Ameritrade contends that

> There is no relationship between the IP addresses, physical locations of TD Ameritrade's servers, the server log files, and Matthews' allegations in this case. Such information is extremely sensitive to TD Ameritrade in view of the security implications of the valuable financial and personal information TD Ameritrade controls, and of no relationship to Mr. Matthews' claims. Furthermore, the entirety of the server log files from 2010 to present are extremely voluminous and such files include IP addresses of TD Ameritrade's clients.[80]

---

[77] Docket 119-1 at 19.

[78] Docket 119-1 at 19.

[79] Docket 130 at 23.

[80] Docket 119 at 7.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 17 of 22

### a. The IP Addresses and Locations of TD Ameritrade Servers

With regard to the IP addresses, Mr. Matthews contends that he "need[s] that information . . . to trace the computers involved in the theft and destruction of [his] code to the user," which he presumes to be TD Ameritrade.[81] This request is therefore relevant to Mr. Matthews' second counterclaim: that TD Ameritrade accessed his hard drive and stole and destroyed his copyrighted material in violation of 17 U.S.C. §§ 1201–1202.[82] However, Mr. Matthews has indicated that he would be able to obtain information about the relevant IP addresses and locations of TD Ameritrade's servers through interrogatories or requests for admission. The Court finds that Mr. Matthews' RFP No. 20 seeks mostly irrelevant information and as such is overbroad and unduly burdensome. Therefore, TD Ameritrade's motion for a protective order as to RFP No. 20 is granted.

### b. The Server Log Files

It is unclear whether Mr. Matthews contends that TD Ameritrade's server log files are also relevant for the same reason that he believes the IP addresses are relevant.[83] While he quotes the entirety of TD Ameritrade's objection, which includes a statement about server log files, in making the above argument, the

---

[81] Docket 124 at 10.

[82] Docket 98 at 21–26, ¶¶ 125–136.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 18 of 22

subheading for that section identifies only the "IP addresses of [TD Ameritrade's] computers" as "information needed by [Mr.] Matthews" to identify the computers involved in the alleged cyber attack.[84]  Elsewhere, Mr. Matthews contends that "computer system log files" he, himself, has produced "indicate that [TD Ameritrade] virtually camped out in [Mr. Matthews'] computer in or about the week of May 27, 2012" to perpetuate the alleged cyber attack.[85]  But he does not explain how all of the log files from TD Ameritrade's servers would be relevant to his counterclaims.

Moreover, Mr. Nave states in his declaration that the "totality of the logs for those servers [relevant to thinkorswim] can produce over 1 Terabyte of data per month," and that the thinkorswim servers are "only a fraction of the total number of servers owned and maintained by TD Ameritrade across its multiple data centers."[86]  Accordingly, the Court finds that production of the log files pursuant to RFP No. 21 would be largely irrelevant and that the request is thus overbroad and unduly burdensome.  TD Ameritrade's motion for a protective order as to RFP No. 21 is granted.

//

//

---

[84] Docket 124 at 10.

[85] Docket 124 at 7.

[86] Docket 125-2 at 4, ¶ 8.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 19 of 22

**Conclusion**

In light of the foregoing, IT IS ORDERED as follows:

(1)     Defendant-Counterclaimant's Motion to Extend Discovery Deadlines at Docket 143 is GRANTED.  All fact discovery shall be completed on or before **December 27, 2019**.  In addition, TD Ameritrade shall respond to Mr. Matthews' October 4, 2019 interrogatories **within 21 days of the date of this order**.  The Court reiterates that **no further extensions of the discovery deadlines will be granted absent exceptional good cause**.

(2)     Defendant-Counterclaimant's Motion for Extension of Time to Complete Discovery at Docket 150 is DENIED as moot.

(3)     Defendant-Counterclaimant's Motion for Leave to File Sur-Reply at Docket 131 is DENIED.

(3)     Plaintiffs-Counterclaim-Defendants' Motion for Protection from Defendant's First Set of Requests for Production at Docket 119 is GRANTED in part and DENIED in part,[87] and IT IS ORDERED as follows:

- The Stipulated Protective Order at Docket 51 remains in full force and effect unless and until modified by further order of the Court.

- TD Ameritrade's request to limit the production period is GRANTED, and discovery for Mr. Matthews' counterclaims is hereby limited to the period

---

[87] The Court has considered and denies Defendant-Counterclaimant's request for an award of the expenses of his opposition. *See* Docket 124 at 12–14.

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 20 of 22

commencing on April 1, 2012 until the present.

- TD Ameritrade's request to limit the scope of Mr. Matthews' First Requests for Production to the 34 studies identified in the July 20, 2015 commercial affidavit is DENIED. The parties shall meet and confer **within seven days of the date of this order** to resolve any remaining issues regarding the scope of production of the studies in a manner consistent with this order. Each party shall then file a status report not to exceed five pages **within seven days of the meet and confer**.

- TD Ameritrade's request for protection from Mr. Matthews' RFP No. 1 is GRANTED to the extent that the RFP seeks production of the source code for the entire thinkorswim application.

- TD Ameritrade's request for protection from Mr. Matthews' RFP No. 20 is GRANTED.

- TD Ameritrade's request for protection from Mr. Matthews' RFP No. 21 is GRANTED.

In addition to the foregoing, the Court hereby schedules a telephonic discovery status conference for **December 3, 2019, at 9:00 a.m. Alaska time.** Parties shall call the Meet Me Bridge (907) 677-6248 from a landline five minutes before the scheduled hearing time and enter access code 668160. Each party shall file a status report regarding discovery, not to exceed five pages, **seven days prior to**

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 21 of 22

**this hearing**, which identifies all unresolved discovery issues and sets out a proposed resolution for each such issue.

DATED this 5th day of November, 2019 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:16-cv-00136-SLG,  *TD Ameritrade, et al. v. Matthews*
Order re Pending Motions and Scheduling Discovery Status Conference
Page 22 of 22