# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TD AMERITRADE, INC., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES RICHARD MATTHEWS,<br><br>　　　　　　Defendant. | Case No. 3:16-cv-00136-SLG |

**ORDER RE MOTION FOR SUMMARY JUDGMENT ON MATTHEWS' COUNTERCLAIMS**

Before the Court at Docket 196 is Plaintiffs TD Ameritrade, Inc., TD Ameritrade Holding Corporation, TD Ameritrade IP Company, Inc., and TD Ameritrade Services Company, Inc.'s (collectively, "TD Ameritrade") *Motion for Summary Judgment in Favor of TD Ameritrade on Matthews' Counterclaims Because He Does Not Own the Asserted Copyright*. Defendant James Matthews responded at Docket 211, to which TD Ameritrade replied at Docket 223. Mr. Matthews filed a request to file a surreply at Docket 228, which TD Ameritrade opposed at Docket 231. Oral argument was not requested and was not necessary to the Court's determination. The underlying facts of this case are set forth in the Court's orders on TD Ameritrade's first, second, and third motions to dismiss; the Court assumes the parties' familiarity with them and they are not

repeated here.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[2] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[3] The non-moving party may not rely on mere allegations or denials.[4] Rather, that party must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[5]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[6] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict

---

[1] *See* Docket 62 (Order re Motion to Dismiss); Docket 97 (Order re Pending Motions); Docket 108 (Order re Motion to Dismiss).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[4] *Id.*

[5] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

[6] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 2 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 2 of 9

for the non-moving party."[7] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[8]

## DISCUSSION

Mr. Matthews asserts counterclaims for copyright infringement pursuant to the Copyright Act[9] and for violations of the Digital Millennium Copyright Act[10] ("DMCA").[11] To state a prima facie case of direct copyright infringement under the Copyright Act, a party must satisfy two requirements: "(1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106."[12] Likewise, the ownership of a copyright is a precondition to DMCA claims.[13]

"[T]he registration of the copyright certificate itself establishes a prima facie

---

[7] *Id.* at 248.

[8] *Id.* at 249.

[9] 17 U.S.C. § 101 *et seq.*

[10] 17 U.S.C. §§ 1201, 1202, 1203.

[11] Docket 98 at 19–21, ¶¶ 109–24 (First Counterclaim); Docket 98 at 21–26, ¶¶ 125–36 (Second Counterclaim); Docket 98 at 26–27 , ¶¶ 137–42 (Third Counterclaim).

[12] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

[13] *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 944–46 (9th Cir. 2010) ("[W]e believe that § 1201 is best understood to create two distinct types of claims. First, § 1201(a) prohibits the circumvention of any technological measure that effectively controls access to a *protected work* and grants *copyright owners* the right to enforce that prohibition. . . . Section 1201(b)(1)'s prohibition . . . entitles *copyright owners* to protect their *existing* exclusive rights under the Copyright Act." (emphasis added)); 17 U.S.C. § 1202(b)(1) ("No person shall, without the authority of the *copyright owner* . . . intentionally remove or alter any copyright management information[.]" (emphasis added)).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 3 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 3 of 9

presumption of the validity of the copyright in a judicial proceeding . . . ."[14]  But the statutory presumption of validity can be rebutted.[15]  To rebut a presumption of validity, an alleged infringer "must simply offer some evidence or proof to dispute or deny [the] prima facie case . . . ."[16]

TD Ameritrade moves for summary judgment on each of Mr. Matthews' counterclaims on the ground that Mr. Matthews does not own a valid copyright.  TD Ameritrade contends that Mr. Matthews "is not a valid copyright owner" because his "'software routines' are derivative works adapted from TD Ameritrade's materials," in particular its thinkScript User Manual, and because "the Client Agreement expressly prohibits creating derivative works based on TD Ameritrade's software."[17]

TD Ameritrade has not registered its thinkScript User Manual or the code contained therein.  However, the Copyright Act provides that "registration is not a condition of copyright protection."[18]  Instead, registration is "[p]ermissive," and the registration provisions of the Copyright Act merely "establish[] a condition— copyright registration—that plaintiffs ordinarily must satisfy before filing an

---

[14] *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992).

[15] *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp. Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

[16] *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021) (quoting *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011)).

[17] Docket 196 at 6 (Mot.).

[18] 17 U.S.C. § 408(a); *see also Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) ("[A]n owner's rights exist apart from registration . . . .").

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 4 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 4 of 9

infringement claim and invoking the Act's remedial provisions."[19]

A copyright owner holds the "exclusive right 'to prepare derivative works based upon the copyrighted work.'"[20] "A 'derivative work' is a work based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" the preexisting work.[21] Mr. Matthews does not deny TD Ameritrade's assertions that significant portions of his registered work are based on TD Ameritrade's materials in the thinkScript User Manual and that TD Ameritrade authored the User Manual. In fact, Mr. Matthews admitted at his deposition that he included the User Manual in his copyright application, copied lines of code and block structures from the User Manual, and based portions of his registered work on modifications of TD Ameritrade's User Manual and other TD Ameritrade materials.[22] Rather, Mr.

---

[19] 17 U.S.C. § 408(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010) ("This provision is part of the Act's remedial scheme.").

[20] *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 237 (9th Cir. 2019) (quoting 17 U.S.C. § 106(2)). Both the Supreme Court and Ninth Circuit have referred to parties as owners of copyrights in the absence of registration. *See Reed Elsevier, Inc.*, 559 U.S. at 157 ("Subject to certain exceptions, the Copyright Act [] requires copyright holders to register their works before suing for copyright infringement. . . . This scheme gives copyright owners 'the exclusive rights' (with specified statutory exceptions) to distribute, reproduce, or publicly perform their works. . . . When [] infringement occurs, a copyright owner 'is entitled, subject to the [registration] requirements of section 411, to institute an action' for copyright infringement." (emphasis omitted)); *In re World Auxiliary Power Co.*, 303 F.3d 1120, 1123 (9th Cir. 2002) ("The three companies owned copyrights in the drawings, technical manuals, blue-prints, and computer software used to make the modifications. . . . The companies did not register their copyrights with the United States Copyright Office."); *see also* 17 U.S.C. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work.").

[21] 17 U.S.C. § 101; *see also U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015–16 (9th Cir. 2012).

[22] *See* Docket 196-1 at 35 ("Q: And those are all things we discussed in the manual, correct? A: They're all – Q: Entries in the manual? A: Yes. Yes."); Docket 196-1 at 14 ("Q: You understand that you submitted [the User Manual] as part of your deposit? A: I do."); Docket 196-1 at 32 ("Q: I think you're on page 6 of [the User Manual] right now? A: Yes. Q: And under the zero base on page 6, do you see the plot VOL equals volume language? A: Yes. Q: And that's the same language in line 4 of [Matthews' study], correct? A: Yes."); Docket 196-1 at 28 ("Q: Could you turn to page 26 of [the User Manual]? A: Yes. Q: And do you see in the second paragraph, the second line, it says you can use a switch statement? A: Yes. . . . Q:

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 5 of 9

Matthews argues that TD Ameritrade does not own a copyright in those materials because it has failed to produce evidence of copyright registration.[23] But Mr. Matthews' argument incorrectly conflates copyright registration with copyright ownership. While copyright registration is generally a prerequisite to pursuing an infringement claim in court, "[a]n author gains 'exclusive rights' in [its] work immediately upon the work's creation, including rights of reproduction, distribution, and display."[24] Here, TD Ameritrade has not brought a suit for copyright infringement that would require registration.[25] Instead, TD Ameritrade challenges

---

And then the next block on [Matthews' study] has almost the same exact structure. It has the first line is a def line. . . . A: Yeah. Over here? Okay, yeah. Yeah."); Docket 196-1 at 15 ("[A]ll I was copyrighting was the portion I created or *modified*" (emphasis added)); Docket 196-1 at 26 ("Q: Why did you include lines with hash wizard in your copyright deposit? A: Because even though the wizard – you're allowed, according to the information, all the information that was available on the wizard, to modify and utilize code output by the wizard; it wasn't required that the wizard be identified. I did leave identifying marks in code if I used the wizard or edited with the wizard in order to keep the profile of the program."); Docket 196-1 at 27 ("It wasn't always really bad either, but if I used the wizard to edit or to modify or to match indicators together, I just left the nomenclature in there[.]").

[23] Docket 211 at 3–6 (Opp.).

[24] *Fourth Estate*, 139 S. Ct. at 887 (citing 17 U.S.C. § 106; *Eldred v. Ashcroft*, 537 U.S. 186, 195 (2003)); *see also Reed Elsevier, Inc.,* 559 U.S. at 157 ("Subject to certain exceptions, the Copyright Act [] requires copyright holders to register their works before suing for copyright infringement. . . . This scheme gives copyright owners 'the exclusive rights' (with specified statutory exceptions) to distribute, reproduce, or publicly perform their works. . . . When [] infringement occurs, a copyright owner 'is entitled, subject to the [registration] requirements of section 411, to institute an action' for copyright infringement." (emphasis omitted)). Mr. Matthews cites *Fourth Estate* in his surreply for the proposition that "protection is lost in ordinary circumstances such as those presented here, if the author publishes the work without registration of the work." Docket 228 at 4 (Surreply). Although the Court declines to consider that surreply, *infra* at 9, the Court notes that *Fourth Estate* does not stand for that broad proposition, but rather that registration is generally a prerequisite to an infringement action. *Fourth Estate*, 139 S. Ct. at 887 ("Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that registration of the copyright claim has been made. Therefore, although *an owner's rights exist apart from registration*, registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." (emphasis added) (internal quotation marks and citations omitted)).

[25] TD Ameritrade instead sought invalidation of a purported lien recorded by Mr. Matthews in its operative complaint. *See generally* Docket 237 (Order).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 6 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 6 of 9

Mr. Matthews' ownership of a valid copyright. And because TD Ameritrade's authorship of the thinkScript User Manual resulted in the exclusive right to create derivative works upon its creation, and because the Client Agreement precludes creation of derivative works based on TD Ameritrade's work, Mr. Matthews does not own a valid copyright in his derivative work.[26]

Mr. Matthews briefly argues that "TD Ameritrade's thinkScript manual is not [] copyrightable" because its "sole purpose is to provide instructions to users of [] thinkorswim for the creation of studies and strategies in thinkorswim" and is therefore "strictly utilitarian."[27] But the only case Mr. Matthews cites held that a vodka bottle was not entitled to copyright protection because it was a utilitarian object that had "no 'artistic features [that] can be identified separately and [that] are capable of existing independently as a work of art.'"[28] By contrast, TD Ameritrade has identified numerous cases that have held that user manuals, or portions of user manuals, are protectable by copyright law.[29] And to the extent that Mr. Matthews has copied lines of computer code contained within the User Manual, computer code is explicitly protectable under the Copyright Act, and those portions

---

[26] The Client Agreement provides: "I will not . . . create derivative works from, distribute, redistribute, display, . . . sell or transfer, or create derivative products from the Services." Docket 4-3 at 17, ¶ 7(b).

[27] Docket 211 at 10 (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078–80 (9th Cir. 2000)).

[28] *Ets-Hokin*, 225 F.3d at 1080 (quoting *Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 893 (9th Cir. 1983)).

[29] Docket 223 at 7 (Reply) (citing cases).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 7 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 7 of 9

of the User Manual would therefore be protectable.[30]

Lastly, Mr. Matthews also asserts that under Nebraska law, the Client Agreement should not be read to prohibit derivative works because such a result would be absurd, and because the Client Agreement is ambiguous and should be construed against TD Ameritrade as the drafter.[31] Assuming Nebraska law applies to the Client Agreement, the only reasonable interpretation of the Client Agreement that Mr. Matthews signed is that it allows customers to use TD Ameritrade's services, including thinkorswim, while providing that TD Ameritrade retains the exclusive rights that arise from copyright ownership. The Court already decided as much when it dismissed Mr. Matthews' Second Amended Answer and Counterclaims:

> To the extent Mr. Matthews seeks to pursue a counterclaim for copyright infringement for code that is a derivative work of TD Ameritrade's source code, he is precluded from doing so, because the Client Agreement specifically prohibits Mr. Matthews from creating a derivative work and it is undisputed that he signed and agreed to its terms.[32]

Indeed, that order specifically addressed substantially similar arguments regarding contractual ambiguity that Mr. Matthews makes here and found those assertions

---

[30] *See* 17 U.S.C. § 101 (defining "computer program"); *see also Google, LLC v. Oracle America, Inc.*, 141 S. Ct. 1183, 1199 (2021) ("By defining computer programs in § 101, Congress chose to place this subject matter within the copyright regime."). If, in the alternative, TD Ameritrade's computer code contained within the User Manual were not copyrightable, then that would undercut Mr. Matthews' argument that he has a valid copyright in his modification and use of that same code.

[31] Docket 211 at 6–10 (Opp.).

[32] Docket 97 at 9 (Order). Mr. Matthews' counterclaims survived only to the extent that he alleged his registered work was not a derivative work of TD Ameritrade's copyrights. Docket 97 at 9–11 (Order).

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 8 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 8 of 9

unavailing.[33] Nor is it "patently absurd" for TD Ameritrade to allow its customers to use its materials and services while retaining its exclusive right under the Copyright Act to prepare derivative works based on its copyrightable materials.[34]

Based on the foregoing, the Court finds that Mr. Matthews does not own a valid copyright in relation to his counterclaims against TD Ameritrade. Those counterclaims are therefore DISMISSED.[35]

## CONCLUSION

The motion at Docket 196 is GRANTED. The motion at Docket 228 is DENIED. TD Ameritrade's motions at Dockets 193, 194, and 197 are DENIED AS MOOT. Mr. Matthews' motions at Dockets 227 and 229 are DENIED AS MOOT.

DATED this 25th day of August, 2021 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[33] Docket 97 at 9 n.44 (Order) (citing Docket 4-3 at 17, ¶ 7(b) (Client Agreement)) ("Mr. Matthews asserts that the Client Agreement 'makes no reference to the thinkorswim platform, or permissions expressly granted to users in the thinkorswim Platform.' Docket 82 at 14. The Client Agreement provides 'I will not . . . create derivative products from the Services.' Docket 4-3 at 17, ¶ 7(b). 'Services' is defined as 'the websites, the Brokerage Services, the TD Ameritrade Content and the Third-Party Content.' Docket 4-3 at 15. 'TD Ameritrade Content' is defined as 'all information, tools, and services available on your website, other than Brokerage Services provided by you, and not by a third party.' Docket 4-3 at 15. Moreover, 'websites' is defined as 'the internet sites of TD Ameritrade, whose domain name is registered as http://www.tdameritrade.com *and others*.' Docket 4-3 at 15 (emphasis added). Although the Client Agreement does not make a specific reference to the thinkorswim platform, the agreement clearly precludes users from creating derivative works from TD Ameritrade Content or Services on TD Ameritrade's websites, which includes the thinkorswim platform."). Likewise, by the terms of the Client Agreement, the thinkScript User Manual would plainly constitute "TD Ameritrade Content."

[34] Docket 211 at 8 (Opp.).

[35] Mr. Matthews also requests that the Court accept his surreply at Docket 228. For the reasons provided in the Court's order at Docket 237, that request is denied.

Case No. 3:16-cv-00136-SLG, *TD Ameritrade, et al. v. Matthews*
Order re Motion for Summary Judgment
Page 9 of 9
Case 3:16-cv-00136-SLG   Document 238   Filed 08/25/21   Page 9 of 9