VINCENT J. D'ELIA
*Pro Hac Vice*, NJ Attorney I.D. #284851972
574 Newark Avenue
Jersey City, New Jersey 07306
Telephone: (201) 656-6503
Facsimile: (201) 656-3276
Email: vjd@deliamccarthy.com
*Attorney for Defendant and Counterclaimant*
*James Richard Matthews*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

TD AMERITRADE, INC., TD AMERITRADE HOLDING CORPORATION, TD AMERITRADE IP COMPANY, INC. and TD AMERITRADE SERVICES COMPANY, INC.,

Plaintiffs-Counter-Defendants,

vs.

JAMES RICHARD MATTHEWS,

Defendant-Counter-Claimant

CASE NO. 3:16-cv-00136 SLG
Dated: August 24, 2022

**DEFENDANT-COUNTER-CLAIMANT MATTHEWS' OPPOSITION TO TD AMERITRADE'S RENEWED MOTION FOR ATTORNEYS' FEES FILED AS ECF DOC NO. 254**

**Introduction.**

In this renewed motion for attorneys' fees by TD Ameritrade, and second bite out of the apple —blatant disregards governing Alaska law regarding attorneys' fees, namely Alaska R. Civ. P 82 — seeking instead full billings of $42,429.55 for a simple,

uncontested motion for the cancellation of a lien pursuant to AS 09.45.164 and AS 09.45.167.

TD Ameritrade states that they seek attorney's fees "pursuant to LR 54.2, Fed. R. Civ. P. 54(d)(2), AS 09.45.164(c), and AS 09.45.167(a); however, missing from their motion is any discussion of the controlling law, Alaska Rule of Civil Procedure 82 (herein, sometimes, "Alaska R. Civ. P 82" or "Rule 82") — referenced in the Local Rules of this Court, Local Civil Rule 54.2(b), and referenced by this Court in its Order denying TD Ameritrade's first motion without prejudice.

Incredibly, TD Ameritrade still seeks its full billings of $42,429.55 — by itself outrageous — but, even worse, totally ignoring the mandatory reduction to 20% of the otherwise allowable fees, imposed by Alaska R. Civ. P 82 — not to mention the further downward adjustment pursuant to the discretionary provisions of the Rule, clearly warranted here.

Finally by way of introduction, it is difficult to understand how TD Ameritrade could so arrogantly ignore the assistance afforded them by this Court, by dismissal without prejudice their prior motion, even with instructions by the Cour as to how they should proceed — followed by simply re-demanding what they demanded in their original misguided motion.

TD Ameritrade's claims should now be dismissed with prejudice.

**Argument.**

Alaska Rule of Civil Procedure 82(a) provides that, with some limited exceptions not present here, "the prevailing party in a civil case shall be awarded attorney's fees calculated under Alaska R. Civ. P 82." *Blair v. Fed. Ins. Co.*, 433 P.3d 1048, 1050, fn1 (Alaska 2018).

There clearly is no agreement between the parties in this case; and there is no governing provision of law, other than Alaska R. Civ. P 82. TD Ameritrade cites no exception or reason why this Court should not apply Rule P 82 in this case; and accordingly, this Court should so apply it, as acknowledged by the Court in its decision herein denying TD Ameritrade's first motion.

Alaska R. Civ. P 82(a) provides:

> (a) Allowance to Prevailing Party. Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

Alaska R. Civ. P 82(b), "Amount of Award", then provides:

> (1) The court shall adhere to the following schedule in fixing the award of attorney's fees to a party recovering a money judgment in a case:
>
> * * *
>
> (2) In cases in which the prevailing party <u>recovers no money judgment</u>, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, <u>and shall award the prevailing party in a case resolved without trial</u> <u>20 percent of its actual attorney's fees</u> which were necessarily incurred. * * *. [*Emphasis Added*.]

Alaska R. Civ. P 82(b).

Clearly in this case, (a) no money judgment was sought or obtained in their action against Mr. Matthews; instead, all they sought was a voidance of the lien, if any; and (b) it was decided on summary judgment, not at a trial.

Accordingly, without more, any fees due to TD Ameritrade are reduced to "20 percent" of its actual attorney's fees — conditioned further upon their having been necessarily incurred. [*Emphasis Added*.]

As hereinafter discussed, most of the fees sought to be charged by TD Ameritrade were not "necessarily incurred", as: (a) Mr. Matthews did not contest that he had mistake in filing the liens, and was always willing to stipulate as to an order for the removal of the liens; and (b) TD Ameritrade never asserted that it had any real or personal property located in, or affected by, the liens filed by Mr. Matthews.

In effect, for the most part none of the fees sought by TD Ameritrade were, "necessarily incurred". In fact, given all of the circumstances surrounding these motions by TD Ameritrade, it seems fair to conclude that the sole purpose of TD Ameritrade's motion(s) is to generate legal fees for their own counsel, i.e., a gravy train for the attorneys.

Alternatively, and/or in conjunction therewith, this Court should additionally make discretionary downward adjustments to what TD Ameritrade would otherwise be entitled under Rule 82, pursuant to Alaska R. Civ. P 82(b)(3), which reads, "(3) The court may

vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

> (A) the complexity of the litigation;
>
> (B) the length of trial;
>
> (C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
>
> (D) the reasonableness of the number of attorneys used;
>
> (E) the attorneys' efforts to minimize fees;
>
> (F) the reasonableness of the claims and defenses pursued by each side;
>
> (G) vexatious or bad faith conduct;
>
> (H) the relationship between the amount of work performed and the significance of the matters at stake;
>
> (I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
>
> (J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
>
> (K) other equitable factors deemed relevant."
>
> If the court varies an award, the court shall explain the reasons for the variation.

Each of the foregoing factors will be analyzed separately in relation to the facts of this case.

**(A) the complexity of the litigation:**

It is difficult to think of a less complex subject matter than the cancellation of a lien pursuant to AS 09.45.164 and AS 09.45.16 — particularly when uncontested as hereinafter described. The statutes are simple; there was no basis for a lien; and accordingly, TD Ameritrade was entitled to have the lien stricken.

Mr. Matthews mistakenly, upon faulty advice of prior counsel, filed the lien, as hereinafter described; however, he was always willing to remove the lien, both before and after the retention of the undersigned.

That condition an d circumstance was made known to TD Ameritrade's attorneys from the beginning of the undersigned's representation of Mr. Matthews, repeatedly during the discovery process.

However, bent on their quest for legal fees, TD Ameritrade refused to entertain any discussion with respect to a stipulation of dismissal of the liens, either before their motion for summary judgment, or after the motion was made. See Motion at ECF Nos. 210 to 210-2; Declaration of Mr. Matthews at Case 3:16-cv-00136-SLG Document 225-1 Filed 03/23/21, *et seq.*

**(B) the length of trial:**

There was no trial.

**(C) the reasonableness of the attorneys' hourly rates and the number of hours expended; (D) the reasonableness of the number of attorneys used; and (E) the attorneys' efforts to minimize fees:**

In addition to the unwillingness of TD Ameritrade to discuss a resolution of the liens without litigation, discussed above, there was no justification for the rates, or amounts of time, attempted to be charged by TD Ameritrade — using largely partners for at best associates work, and more likely paralegal level work.

As this Court has recognized, in accordance with *Nautilus Marine Enterprises, Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 560 (Alaska 2014), the Alaska Supreme Court held that absent extraordinary circumstances —such as the unavailability of competent and willing local counsel— attorneys' fees should be determined in accordance with the "the fee customarily charged in the locality for similar legal services."[1]

Based upon the undersigned's research, such "prevailing rate" at the time of the events in question should be no more than $300 per hour. See *e.g.* https://www.contractscounsel.com/b/how-much-do-lawyers-cost [last visited 08/23/2022.].

[1] "In sum, we conclude that, on the facts as found by the superior court, no extraordinary circumstances—such as the unavailability of competent and willing local counsel—exist to justify a departure from the locality rule. We remand this issue to the superior court for a recalculation of the attorney fees award based on "the fee customarily charged in the locality for similar legal services."

TD Ameritrade requests that the Court use the $400 hourly rate that Attorney Ronen states to be the median rate for Alaska attorneys from a publication affixed to Attorney Ronen's Declaration, called the *2018 U.S. Consumer Law Attorney Fee Survey*.

However, their analysis contains multiple flaws.

First, according to the undersigned's analysis of the report, it states that median in Alaska for all attorneys is $325 per hour, not $400 per hour as claimed by TD Ameritrade. See ECF Doc No. 254-1, Page 104 of 141, snippet below. Secondly, TD Ameritrade should be using the average, not the median for their analysis, albeit it is the same in this case. *Id*.

Snippet:

| | |
|---|---|
| Average Billable Paralegal Rate | 68 |
| **Average Attorney Rate for All Attorneys** | **325** |
| 25% Median Attorney Rate for All Attorneys | 250 |
| **Median Attorney Rate for All Attorneys** | **325** |

However, even more significantly, even recognizing the lower TD Ameritrade still have not reduced what they want the Court to award, seeking instead the following:

| | | | | |
|---|---|---|---|---|
| Herbert Ray | 1.20 | 5/2016-9/2016 | $467.50 | $561.00 |
| Melanie Ronen | 29.90 | 8/2019-2/2021 | $548 | $16,385.2 |
| Melanie Ronen | 11.30 | 3/2021-9/2021 | $580 | $6,554.00 |
| Melanie Ronen | 3.00 | 6/2022 | $639 | $1,917.00 |

TD Ameritrade has advanced no argument as to why the higher rates of the partners in the law firms should be justified for anything with respect to this motion for attorneys' fees — when the work clearly did not require partner level guidance, but could have been handled by lower level associates or perhaps even paralegals.

In accordance with Nautilus *Marine*, *supra*, aside from everything else, all of the charges by Herbert Ray and Melanie Ronen, should be reduced to the hourly rate of $300 per hour.

Note also that Courtney Collins (33.5 hours) and of Zachary Berne (1.10 hours) (presumably Alaska attorneys, although not clear) were each at $284.75 per hour — which would appear to be an acknowledgement of that worth for work done six years ago, by an associate in Alaska — clearly all that should have been required given the low level of substance to the issues.

Finally, TD Ameritrade apparently seeks the following additional partner level fees for its work on this motion, where they state

> TD Ameritrade has incurred the following additional fees in July 2022 in connection with TD Ameritrade's concurrently filed Motion for Attorneys' Fees that have not yet been billed by Keesal, Young & Logan:

| **Professional** | **Recap of** | **Rate** | **Fees to be** |
|---|---|---|---|
| Melanie Ronen | 8.4 | $639 | $5,367.60 |
| Melanie Sharpe | 6.8 | $248 | $1,686.40 |
| **Total Fees Incurred But Not Yet Billed:** | | | **$7,054.00** |

Again, partner level time just for billing! Absurd!

Obviously, much time was required (and wasted) on the voluminous Complaint in this matter, followed by an Amended Complaint of similar volume (see ECF Nos 04-12, the latter containing 355 pages). Yet, nowhere in the complaint did they cite Alaska R. Civ. P 82

**(C) the reasonableness of the attorneys' hourly rates and the number of hours expended; (D) the reasonableness of the number of attorneys used; (E) the attorneys' efforts to minimize fees**

There was no showing by TD Ameritrade that so much partner input was required (necessarily incurred) on what should have been a simple motion as that needed to obtain a dismissal of Mr. Matthews' lien.

Neither was such partner input was necessary for this motion for attorneys' fees. See Declaration of Melanie Ronen and chart showing her work on this motion:

| | | | | |
|---|---|---|---|---|
| Herbert Ray | 1.20 | 5/2016-9/2016 | $467.50 | $561.00 |
| Melanie Ronen | 29.90 | 8/2019-2/2021 | $548 | $16,385.2 |
| Melanie Ronen | 11.30 | 3/2021-9/2021 | $580 | $6,554.00 |
| Melanie Ronen | 3.00 | 6/2022 | $639 | $1,917.00 |

In addition, there was no need for such a voluminous complaint — filed for a lien that was clearly invalid and of no effect outside of Alaska — and considering that TD Ameritrade never claimed to have any real property in Alaska that could be affected by the lien. [Emphasis Added.]

There was absolutely no justification for so many hours of attorneys' time — particularly such high rate attorneys, and more particularly considering Mr. Matthews' willingness to cancel the lien (or join in a stipulated court order for that purpose) — coupled with TD Ameritrade's insistence upon going ahead with a full-fledged motion, on a lien that clearly did not affect TD Ameritrade in Nebraska; and neither did TD Ameritrade claim any property affected in Alaska. [*Emphasis Added*.]

Such conduct by TD Ameritrade strongly suggests that TD Ameritrade's pursuit of their litigation on the issue of attorneys' fees was solely for the purpose of earning — and bludgeoning Mr. Matthews — with attorneys' fees that he would be unable to pay.[2]

**TD Ameritrade bases its claim on Attorney Melanie Ronen's purported summary of the legal time spent, not upon contemporaneous time records; after the substantial redaction, the eighty or so pages of time records have insufficient information to establish just what was done by each attorney, and accordingly should be rejected.**

The time records submitted by TD Ameritrade do not appear to be contemporaneous, and accordingly should not be entitled full credit. *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514 (9th Cir. 1988)

In addition to the foregoing, deficiencies in TD Ameritrade's papers, with the substantial redactions of TD Ameritrade's attorneys' time records, there remains

[2] Not also that TD Ameritrade requests in its proposed order, not a judgment, but an order requiring Mr. Matthews to pay the fees they seek — obviously with the intent of having Mr. Matthews jailed if he does not pay. A wretched maneuver that should unequivocally be rejected by the Court.

insufficient information to determine what the billings are about, and why they were justified.

TD Ameritrade provides instead the chart summary by Attorney Ronen, also set forth above:

| | | | | |
|---|---|---|---|---|
| Herbert Ray | 1.20 | 5/2016-9/2016 | $467.50 | $561.00 |
| Melanie Ronen | 29.90 | 8/2019-2/2021 | $548 | $16,385.2 |
| Melanie Ronen | 11.30 | 3/2021-9/2021 | $580 | $6,554.00 |
| Melanie Ronen | 3.00 | 6/2022 | $639 | $1,917.00 |

However, this does not enable the Court, or this attorney, to decipher the deficient time records — the only purported contemporaneous record of TD Ameritrade's attorneys time expended.

Accordingly, this summary should be rejected, as it is not sufficient to establish the merits of TD Ameritrade's claim.

**(F) the reasonableness of the claims and defenses pursued by each side:**

**(G) vexatious or bad faith conduct:**

Clearly demonstrated here by TD Ameritrade.

**(H) the relationship between the amount of work performed and the significance of the matters at stake:**

**As** aforesaid to this day, TD Ameritrade has never identified any property, real or persona, located in Alaska, that has been or would have been affected by the lien filed by Mr. Matthews. Neither has TD Ameritrade presented any evidence to indicate that a lien

filed in Alaska would or could have any extraterritorial affect; i.e., on real or personal property located outside the state of Alaska. Accordingly, any claim that TD Ameritrade was injured by Mr. Matthews' actions is bogus, and without any real, actual significance.

> **(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts: and**
>
> **(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer:**

TD Ameritrade's motivation is clearly questionable, if not virtually inhumane — given their extraordinary wealth — particularly since the recent merger with Charles Schwab, a 56 billion dollar entity according to estimates.[3]

It should not be difficult to infer that their motivation is simply to harm Mr. Matthews because of his mistake.

Finally, this Court Should consider the following final factors in accordance with Alaska R**. Civ. P 82(b)(3):**

> **(K) other equitable factors deemed relevant;**
>
> **(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts**;
>
> **(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart**

---

[3] https://en.wikipedia.org/wiki/Charles_Schwab_Corporation [last visited on 11/1/2022.]

**from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer**; and

**(K) other equitable factors deemed relevant**.

Mr. Matthews is not a person of substantial means. In the recent years he has lived in a small cabin in the Kenai Peninsula. During this litigation he has survived with a meager existence. No doubt TD Ameritrade, through its due diligence, is fully aware of Mr. Matthews' situation. He pursued his claims in this case in good faith, but lost on procedural grounds that were less than fair, in the broader scope of things, this attorney contends. Mr. Matthews was unrefutably an expert in the Basic computer language; and the evidence clearly demonstrated that he created his codes independent of TD Ameritrade's tenuous (actually unstained by competent evidence) claims as to ownership of the thinkScript User Manual.

At the time his primary initial motivation was simply to stop TD Ameritrade's employees from stealing his code, created by him as a registered user of thinkorswim — a program designed for self directed users, and therefore presumably befitting for someone like Mr. Matthews, a Master programmer in the Basic computer language. See https://en.wikipedia.org/wiki/Dartmouth_BASIC [last visited 11/01/2022.]

On the other hand, TD Ameritrade, originally a multibillion-dollar entity, and now merged with Charles Schwab, and even larger, 50-billion-dollar entity according to

estimates.[4] Why TD Ameritrade has such a burning need so aggressively harm Mr. Matthews, is perplexing at best.

Based upon the circumstances, and all of the needless deficiencies in TD Ameritrade's motion, neither this Court, nor Mr. Matthews should be required to go through the laborious task of defending these exorbitant and defective claims by TD Ameritrade for attorneys' fees.

Such a result would surely chill and deter similarly situated litigants from the voluntary use of the courts; and any award of fees to TD Ameritrade, under all of the circumstances, would clearly be inequitable result — requiring Mr. Matthews to correct the deficiencies in TD Ameritrade's motion.

---

[4] https://en.wikipedia.org/wiki/Charles_Schwab_Corporation
[last visited on 11/1/2022.]

**Conclusion**

Accordingly, Mr. Matthews requests that Court deny TD Ameritrade's claim for attorneys' fees, in its entirety, with prejudice, and enter the order submitted herewith, together with such other and further relief as the Court deems just and proper, including without limitation expressly permitting Mr. Matthews to file a claim for attorneys' fees against TD Ameritrade, based upon their failed motions.

Dated: August 24, 2022

Respectfully Submitted,
/s/Vincent J. D'Elia

VINCENT J. D'ELIA
574 Newark Avenue
Jersey City, New Jersey 07306
Telephone: (201) 656-6503
Facsimile: (201) 656-3276
Email: vjd@deliamccarthy.com
*Attorney for Defendant Matthews*

C:\Users\elban\Dropbox\00 D'Elia Matthews v TDA AK\000 Matthews TDA Renewed Motion Atty Fees Cancel Lien\Matthews Opposition Attorneys Fees Renewed Motion D8F.docx